In the Matter of

**JOSEPH N. TAUBER,** Appellant

v.

**WALTER A. GORDON**

No. 14,896

United States Court of Appeals

Third Circuit

Reargued May 25, 1965

Decided July 30, 1965

*See, also, 350 F.2d 843*

JOSEPH L. RAUH, JR., ESQ., Washington, D.C., *for appellant*
ALMERIC L. CHRISTIAN, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before BIGGS, *Chief Judge*, and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, *Circuit Judges*

PER CURIAM:

During the course of the trial of a civil tax controversy in the District Court of the Virgin Islands, the court cited the appellant, an Assistant Attorney General who was trying the case for the Government of the Virgin Islands, for criminal contempt and summarily fined him $100. The entire procedure of citation and summary conviction appears in the verbatim transcript of the proceedings immediately before and immediately after the court reconvened following an off-the-record discussion in chambers:

## "IN * * * CHAMBERS"

"Court: Let the record show that the Government wanted to call Mr. Charles Haim back on the stand as an adverse party and the Court refused on the grounds that he was on

the witness stand for three and a half hours on cross-examination and he's a sick man—very elderly, and has had a stroke and had to go to the Doctor as reported to the Court, and I'm not going to allow him to be called back to the stand.

## "IN OPEN COURT"

"Mr. Tauber: I must make a request to the Court that in view of what happened in Chambers, I personally would like to request to seek the assistance of counsel for myself because of the contempt threat that was placed on my head in chambers and not in open court.

"Court: I'm placing it right here in open court. If you keep on talking I'll fine you for contempt of court right now. In the first place, that was a private thing in there and it was perfectly friendly until you just kept talking and now you come out here—.

"Mr. Tauber: (Interposing) Something was put on the record, your Honor.

"Court: There was nothing put on the record.

"Mr. Tauber: About Mr. Haim not taking the stand.

"Court: Mr. Tauber, Counsel asked that we go into private chambers and discuss something and I told you when we left there that we could put on the record that Mr. Charles Haim was not going to be permitted to go on the stand.

"You have deliberately come out here and started another argument.

"I'm going to fine you one hundred dollars ($100.00) for contempt of court. Let the record so show.

"Mr. Tauber. For the reason that I came out here and—

"Court: I said one hundred dollars for contempt of court. It's through your conduct all the way through this trial. This is not the first. It just culminated in your deliberately coming out here after the meeting in chambers and starting to discuss something.

610

"Mr. Tauber: I requested only the assistance of counsel.

"Court: I know what you've done and I'm fining you one hundred dollars.

"Mr. Tauber: May I request your Honor to stay the fine for appeal?

"Court: No, I'm not going to stay it. Go on with your case."

Subsequently the court made its disposition of the matter more formal in an order which recited that "throughout the trial of the case * * * Joseph N. Tauber continuously objected to and commented upon the rulings of the Court after said rulings had been made" and "had been constantly admonished by the Court that his action bordered on contempt". The order also referred to the episode of attempted disclosure of confidential matter, which we have set out above as it appears in the record, as the culmination of Tauber's improper course of conduct.

Tauber appealed from that order and a divided panel of this court affirmed the district court's action. Thereafter, we granted the present rehearing before the court en banc.

■ It will be observed that the district court has identified with particularity only one occasion upon which Tauber's conduct was deemed contemptuous. We have quoted in full the transcript of what occurred then. We are unable to read anything that Tauber said at that time as an attempt to disclose in open court any confidential matter that had been discussed in chambers. If the conviction depends upon contemptuous behavior on that occasion, the record does not support it.

■ ■ On the other hand, the formal contempt order states as a further reason for holding Tauber in contempt the fact that "throughout the trial" he "continuously objected to and commented on the rulings of the court after said rulings had been made". But beyond this general assertion the court did not specify the items or occasions of mis-

behavior which it deemed serious enough, individually or cumulatively, to merit punishment as contempt. Such a general characterization of behavior over a seven day trial period is not specific enough to satisfy the requirement of Rule 42(a) of the Rules of Criminal Procedure that a summary "order of contempt shall recite the facts * * *." See Parmelee Transportation Co. v. Keeshin, 7th Cir. 1961, 294 F.2d 310, 314–315. This requirement is more than a formality. It is essential to disclosure of the basis of decision with sufficient particularity to permit informed appellate review.

■ In this case, the district attorney, who ably discharged his responsibility to support the contempt order on this appeal despite the fact that he did not participate in the proceedings in the district court, attempted to give specific meaning to the general language of the contempt order by culling from the record and presenting to this court all of the episodes of questionable conduct by Tauber and contention between court and counsel which the court may have had in mind. Certainly the episodes thus brought to our attention disclose peevish and unduly persistent disputation, as well as several acts, equivocal and difficult to characterize on the paper record, which as they occurred might have impressed the trial judge as deliberately disruptive of orderly trial.[1] But counsel's enumeration of occurrences which, in his view after the event, afforded a proper basis for a contempt order cannot be substituted for

[1] The dissenting opinion is mistaken in its assertion that "[t]his court refuses to read that record and simply closes its eyes to every occurrence other than the single one noted in the majority opinion". We are painfully aware of all that the record discloses, including such unpleasantries as are mentioned hereafter in footnote 2. It is in the light of that awareness that we are convinced that a contempt conviction, based on one specification of conduct that, on review, appears not to have been contemptuous, and a generalized reference without specification to a course of conduct throughout trial, cannot be sustained. A criminal contempt order like any other conviction of crime must stand or fall on the sufficiency of the specification of wrongdoing upon which it is based.

the required specification by the trial judge of the facts upon which he actually predicated his contempt order.

Though we have no doubt that the district court was subjected, as courts often are, to considerable vexation,[2] we conclude that appellant's conduct during the episode immediately after the conference in chambers was not contemptuous and that the court has not adequately specified any other acts of a contemptuous nature. For these reasons this summary conviction must be set aside.

It will be so ordered.

McLAUGHLIN, Circuit Judge (dissenting):

The record here clearly establishes that appellant, an attorney representing a party in the trial of a civil action, was guilty of a course of deliberate, contemptuous conduct to the trial judge which persisted throughout the seven day trial and which obstructed the administration of justice. The *complete* record further reveals that the court was

---

[2] The dissenting opinion asserts that during the troubled course of this trial "the court was most patient in dealing with the attorney". No doubt the court was provoked by the attorney's persistence in arguing after rulings had been made. However, as human beings, judges sometime react to vexation with retorts and a show of irritation that are both provoked and provoking. So, in this case at one point counsel argued that in the circumstances the court did not have "the power to order a [tax] refund", and the court retorted: "The only thing I have the power to do is whatever I choose to do." On another occasion, upon the completion of the examination of a witness shortly before midday, the following colloquy occurred:

"Mr. Tauber: Your Honor, may I ask if your Honor plans to recess at 12 because—

"Court: I'll run the court.

"Mr. Tauber: I'm only asking your Honor—

"Court: I don't have to tell you what I'm going to do.

"Mr. Tauber: I only asked your Honor a question.

"Court: I know what you asked. You didn't have any business asking it in the first place."

It is also apparent that throughout the trial the court was greatly displeased that counsel insisted upon making offers of proof when the court sustained objections to proffered testimony. In response to one such offer of proof the court stated "I do not like that particular style of doing things * * * to tell me after I made a ruling that you want to make an offer of proof and put it in the record * * *." One subsequent offer was cut off with the warning: "If you keep on, I'm going to sit you down and call off your examination."

Such instances could be multiplied. We cite them simply to make the point that, contrary to the intimation of the dissenters, the entire course of this trial was marked by exchanges between court and counsel that were heated and acrimonious on both sides.

most patient in dealing with the attorney. The latter constantly persisted in continuing to argue after the court had made its ruling. Appellant committed other patently contemptuous actions such as turning his back on the judge, throwing a book down and disobeying the direct order of the court by referring to a topic which the court had held was not to be discussed. Whether the judge was right or wrong in his trial rulings was for the appellate court. His authority to make them was not to be flouted simply because of petulant disappointment at his decisions.

The majority's quoted phase of the district court proceedings unmistakably reveals that the question of witness Charles Haim being recalled to the stand had been disposed of in chambers and that the court had had the result recorded by the stenographer. With that incident closed and the record fully protecting Tauber in the event he disagreed with the court's ruling, Tauber, under the guise of asking for counsel, was in the judgment of the court once more attempting to reopen a decided issue instead of using the proper appeal channel. The court's comment on this was "You have deliberately come out here and started another argument." In the light of the trial-long attitude of the attorney, the court was justified in considering the episode as part of the tactic of continuing an ill concealed defiance and contempt of the court's rulings. The court at that time held Tauber in contempt, not for a single incident but as the court then and there stated, "It's through your conduct all the way through this trial."

The majority concedes that several trial acts of Tauber brought to our attention "* * * which as they occurred might have impressed the trial judge as deliberately disruptive of orderly trial." However, this court refused to consider these because the trial court, though it based its holding upon Tauber's conduct throughout the trial, did not detail "* * * the items or occasions of misbehavior which

it deemed serious enough individually or cumulatively to merit punishment as contempt." While effort was made to explain some of the trial incidents none of them was denied. In Sacher, et al. v. United States, 343 U.S. 1, 5, 72 S.Ct. 451, 96 L.Ed. 717 (1952) the certificate of contempt (the equivalent of the district court's order in this matter) as Mr. Justice Jackson states in the opinion "* * * incorporates, by reference, the 13,000 pages of trial record." He goes on to say "The certificate in full and summary of relevant evidence have been reported below." That practice was accepted by the Supreme Court and is largely similar to what we have in this appeal. There, as here:

"It is relevant to the questions of law to observe that the behavior punished as a result of the Court of Appeals' judgment has these characteristics: It took place in the immediate presence of the trial judge; it consisted of breaches of decorum and disobedience in the presence of the jury of his orders and rulings upon the trial; the misconduct was professional in that it was that of lawyers, or of a layman acting as his own lawyer. In addition, conviction is not based on an isolated instance of hasty contumacious speech or behavior, but upon a course of conduct long-continued in the face of warnings that it was regarded by the court as contemptuous. The nature of the deportment was not such as merely to offend personal sensitivities of the judge, but it prejudiced the expeditious, orderly and dispassionate conduct of the trial."

One of the major difficulties in Sacher was that the district judge awaited completion of the trial before holding the attorneys concerned in contempt. That was for the sound reason that the court did not wish to prejudice counsel before the jury. In the present instance there was no jury and no problem of that sort to be avoided.

Plainly, Tauber's punishment was deserved and salutary. There is no valid excuse for setting aside the conviction at this time. This court has the trial record which is not long. *It is appellant's conduct throughout the trial that formed the basis of the judgment of the district court.* This court

refuses to read that record and simply closes its eyes to every occurrence other than the single one noted in the majority opinion. In so acting the court is not passing on the merits of the appeal. It is consciously refusing a district judge of this circuit a fair, full hearing on his admittedly meritorious reasons for his decision. The least we should do in common justice to both parties is to retain jurisdiction and remand the appeal to the district court for the purpose of having the judge further particularize the actions of the appellant which the judge held to be contemptuous and upon which he made his order.

Judge STALEY and Judge GANEY concur in this dissent.