# EUGENE MUSKUS *v.* STATE OF MARYLAND

[No. 357, September Term, 1971.]

*Decided February 7, 1972.*

The cause was argued before MURPHY, C. J., and MORTON and MOYLAN, JJ.

*Edward P. Camus,* with whom were *Camus & Keane* on the brief, for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Judge Samuel J. DeBlasis found Assistant State's Attorney Eugene Muskus in direct criminal contempt of court on two occasions in the course of a defective delinquency jury trial in the Circuit Court for Prince George's County; fines in the amount of $25.00 and $10.00 respectively were assessed against Muskus, a bench warrant was issued, and he was jailed pending payment of the fines. In an opinion filed in support of his orders, Judge DeBlasis stated, with reference to the first contempt citation, that Muskus "frequently debated the rulings of the court throughout the course of the proceedings even though he had been admonished not to do so." As to the second contempt citation, Judge DeBlasis stated that Muskus "refused to return to counsel table after a bench conference although ordered to do so on several occasions." Judge DeBlasis concluded, presumably with reference to both contempt citations, that "Muskus' conduct

was arrogant and wilfully disobedient during the entire proceedings"; he said "more particular reference is made to pages 3, 4, 5, 15, 16, 27, 28, 29, 30, 31, 41, 42, 61, 63, 64, 65, 66, 67, of the transcript for additional facts * * *." At a hearing held on Muskus's motion for reconsideration of the contempt citations, he told Judge DeBlasis that because he did not intend to be contemptuous, and did not believe that he had been, he could not apologize for his conduct since to do so would constitute a deception on his part solely to placate the court and would itself be a contemptuous act. Judge DeBlasis denied Muskus's motion; he stated that Muskus did not show that he was remorseful for his conduct. In the course of his remarks, Judge DeBlasis said Muskus's "conduct at that time was somewhat less than antagonistic, perhaps in the heat of battle, but I think he was just frankly, completely and totally in disregard of the position of the Court."

On appeal Muskus contends that his conduct was not contemptuous, that he was not arrogant, disrespectful or wilfully disobedient. He claims that he was but advocating his case, zealously trying his best, though inexperienced.[1]

The pertinent background facts are these: At 1:50 p.m. on July 23, 1970, the case of *State v. Sorrell* was called for trial before Judge DeBlasis and a jury. Immediately after the jury was impaneled, Muskus requested a short continuance on behalf of the State; he explained to the court that its witness, Dr. Kelman, a staff psychiatrist at Patuxent Institution, was not then present in court but had been notified at 12:45 p.m. that trial was about to commence; that it would take thirty to forty-five minutes for the witness to arrive; that although the case had been set for trial at 10:00 a.m. that morning in another court room, it did not proceed as scheduled because of other pending matters in that court;

---

1. In his brief Muskus states that he was admitted to practice law on July 7, 1969; that he was employed as a full-time prosecutor seven days later; and that the instant case was his first jury trial in a defective delinquency proceeding.

and that as a result, Dr. Kelman had been told that he would be contacted. Judge DeBlasis indicated his displeasure that the jury was required to wait on Dr. Kelman. He chastised Muskus for not having notified him in chambers that Dr. Kelman was not present in court. Muskus replied that he hadn't known previously to which court room the case would be assigned and therefore had not earlier notified the judge. The court asked Muskus if he had any other witnesses; he responded, saying "This is a defective delinquent * * *," at which time Judge DeBlasis interrupted him, stating:

> "I know what it is. You don't have to tell me what it is. You are trying the Court's patience a little too much right this moment."

Muskus told Judge DeBlasis that Dr. Kelman was his only witness. The court said:

> "We will think about holding you in contempt. Do you have any other witnesses that you can present?"

Muskus replied:
"No, Your Honor, just one witness."
Judge DeBlasis told both Muskus and the jury that unless Dr. Kelman was present in court in fifteen minutes, the court would consider granting a mistrial. Soon thereafter, Dr. Kelman arrived, and the case proceeded to trial.

Muskus questioned Dr. Kelman at length. He asked him relevant questions pertaining to the only issue in the case, *viz.*, whether Sorrell was a defective delinquent within the meaning of Maryland Code, Article 31B, Section 5.[2] Specifically, Muskus developed in full and orderly

---

2. "For the purposes of this article, a defective delinquent shall be defined as an individual who, by the demonstration of persistent aggravated antisocial or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment."

fashion the witness's professional qualifications, the nature and purpose of Patuxent Institution, and the type of diagnostic tests used to evaluate whether a person is a defective delinquent. Muskus introduced Sorrell's Patuxent record into evidence. He asked Dr. Kelman a number of relevant questions concerning medical, psychiatric, and psychological tests conducted by the Institution on Sorrell and the results of those tests. He asked Dr. Kelman pertinent questions relating to the substance of staff reports concerning Sorrell. He sought to elicit relevant information concerning Sorrell's social background and criminal history, including both his and the State's version of the attempted rape offense for which Sorrell was referred to Patuxent for evaluation. Judge DeBlasis told Muskus that there was no reason to go into the offense, to which Muskus replied:

> "Your Honor, this is to give a background of
> the defendant * * * in a proper prospective."

Judge DeBlasis told Muskus to limit his inquiry to Sorrell's behavioral pattern. Muskus responded that he believed Sorrell's counsel would go into detail with respect to the attempted rape offense; the court said it was not going to permit Muskus to argue the case and directed him "to get to the essence of the case."

Muskus then asked Dr. Kelman about Sorrell's past offenses. Sorrell objected. The court said that it was proper to outline "the other crimes" which Sorrell had committed but told Muskus "not to get into the essence of the crime" since it served no useful purpose. Thereafter, Dr. Kelman testified with respect to the attempted rape offense and stated it was the only crime committed by Sorrell as an adult. He related the details of the commission of the crime, after which Muskus questioned him further concerning Sorrell's family, school, and marital history, and the results of his physical, psychiatric, psychological examinations. Muskus then asked Dr. Kelman to summarize his testimony. Judge DeBlasis indicated

that the summary was unnecessary. This colloquy then followed:

"Mr. Muskus: Was there any objection by defense counsel?

The Court: No, but there is objection by the Court.

Mr. Muskus: Oh, excuse me."

Dr. Kelman then testified that it was his opinion, and that of the Patuxent staff that Sorrell was a defective delinquent. Muskus then indicated to the court that he wanted to put Dr. Kelman's testimony "in proper prospective" for the jury. Sorrell objected and the court sustained the objection. Muskus undertook to ask another question. The court interrupted him, stating:

"You didn't understand the ruling of the Court. We won't permit you to do that."

Muskus replied:

"Permit what, Your Honor?

The Court: You are not to argue. The Court is not going to debate the issue here. We make the rulings and we ask that you be bound by it."

Muskus next asked Dr. Kelman how Sorrell fit the elements of the defective delinquent definition. The court again interrupted him, stating that Dr. Kelman had already testified that Sorrell was a defective delinquent. Muskus replied:

"Yes, but I would like to have the jury clarify to them how this is applicable to Mr. Sorrell.

The Court: He's already told you that.

Mr. Muskus: Because we have it piecemeal and this is to put it in a proper perspective.

354

The Court:    The court is going to admonish
you one more time and then
hold you in contempt. We ask
that you proceed on in this
case."

Muskus proceeded by asking Dr. Kelman whether he
was familiar with the report of Dr. McCormack con-
cerning Sorrell; Kelman replied that he was. The court
solicited an objection to the question from Sorrell's coun-
sel which it sustained. Muskus asked Dr. Kelman whether
Dr. McCormack's report changed Kelman's impression
of Sorrell. Again, the court solicited an objection from
defense counsel which it sustained. At a bench confer-
ence requested by Muskus, he told the court that the de-
fense had made no objection to his question. This col-
loquy then followed:

"The Court:    I am going to say to you for
the last time. The next time we
have to caution you about any-
thing we will definitely hold
you in contempt. We think you
are trying the patience of this
Court. If you don't know how
—
"Mr. State's Attorney, the
Court is going to hold you in
contempt and fine you $25. If
you don't know how to pro-
ceed in this case we will give
you time to recess in which to
gather your faculties and pro-
ceed properly. We are holding
you in contempt and we are
charging you a fine of $25 in
this instance. Your attitude is
arrogant.

Mr. Muskus:    A short recess, Your Honor?
Just a short recess?

The Court: We will ask you to proceed. We have already held you in contempt. And, Mr. Sheriff, he will be in your custody until he pays the fine of $25. We ask you now to proceed in this case."

After this exchange, Muskus asked no further questions on direct examination. Following a lengthy cross-examination of Dr. Kelman, Muskus asked him, on redirect examination, a long and somewhat confused question, to which Sorrell objected. The objection was sustained and Muskus undertook to rephrase the question. The court interjected:

"Maybe you didn't hear me, Mr. State's Attorney. The objection is sustained. Do you understand the Court's ruling?"

Muskus asked no further questions, and rested the State's case.

Sorrell called a psychiatrist, Dr. John McCormack, to testify on his behalf. Dr. McCormack testified at great length with respect to Sorrell's background and particularly as to the details of and reasons underlying the attempted rape conviction. He indicated that Sorrell had had an erection throughout the day on which the crime was committed, but had no thought of sex and was not seeking sexual gratification when he assaulted the victim. He said that Sorrell had been drinking during the day and as a result was impulsive; that the crime was not one of violence; that there was little force involved, and Sorrell had not hurt the girl. He testified that Sorrell was not a defective delinquent.

On cross-examination, Muskus undertook to explore the basis for Dr. McCormack's conclusion that the attempted rape offense was not a crime of violence. The court inquired of Muskus as to his purpose in asking such questions; Muskus said that he wanted to show that Sorrell was a violent person. Judge DeBlasis then in-

356

quired what relevancy Sorrell's day-long erection had to the issue in the case. Muskus replied in effect that he was attempting to develop Sorrell's whole antisocial history. The court responded:

"You seem to want to continually argue with the Court.

| | |
|---|---|
| Mr. Muskus: | No, I don't intend to argue. |
| The Court: | I know— |
| Mr. Muskus: | No, Your Honor, I don't. |
| The Court: | —I don't intent to permit you to do so. |
| Mr. Muskus: | I don't intend to argue with the Court, but I intend to at least present to the jury the particular circumstances here that we have; the type of person the defendant is; the doctor stating that maybe rape is not a violent crime, leaving the jury with the impression that what the defendant is— |
| The Court: | That is not the issue in this case. |
| Mr. Muskus: | Your Honor, I would feel that the— |
| The Court: | If you are asking questions that pertain to the issues in this case— |
| Mr. Muskus: | I felt this is a pertinent fact. |
| The Court: | Well, the Court has to admonish you once again, Mr. Muskus. If you can't draw anything from that, we might be a little more firmer in the future. |
| Mr. Muskus: | What does the Court intend, Your Honor? |
| The Court: | You seem to want to question every time we do something. My rulings are not debatable. |

Mr. Muskus: I realize that, Your Honor. With all due respect—

The Court: You may return to counsel table.

Mr. Muskus: —I'd like to make the record clear.

The Court: You may return yourself to counsel table.

Mr. Muskus: Your Honor, if I may, please, for the record, I have no disregard—

(Court raps gavel.)

The Court: The Court is holding you in contempt again, and fine you another $10, and next time you will be incarcerated.

Mr. Muskus: Your Honor, would Your Honor state for the record the reasons why I am held in contempt for appeal?

The Court: Mr. Sheriff—

Mr. Muskus: Your Honor—

The Court: —the attorney is in your custody.

Mr. Muskus: I move for a mistrial for information not relevant to the case and placing both the State and the defendant at a disadvantage.

The Court: Mr. Sheriff, the attorney is in your custody until he pays this fine.

Mr. Muskus: Your Honor, I would move for a mistrial first.

The Court: You are going to get moved in jail if you continue in your conduct." [3]

---

3. Judge DeBlasis thereafter told the jury that Muskus's conduct "jeopardized" Sorrell's position, and he, therefore, declared a mistrial.

Maryland Code, Article 26, Section 4, provides, in pertinent part, that "[t]he power of the several courts of the State to * * * inflict summary punishments for contempt of courts shall not be construed to extend to any cases except:

"(1) The misbehavior of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice;
(2) the misbehavior of any officers of the said courts in their official transactions;
(3) the disobedience or resistance by any officer of the said courts, party, juror, witness or any other person or persons to any lawful writ, process, order, rule, decree or command of the said courts; * * *."

We noted in *Goldsborough v. State,* 12 Md. App. 346, that while it was the legislative purpose in enacting Section 4 to restrain the courts from punishing as a contempt anything not falling within its terms, the judicial power to punish for contempt could not be so limited; that the right to punish for contempt by summary conviction is a power inherent in all courts of justice, and essential for their protection and existence. In *Ex Parte Sturm,* 152 Md. 114, 120-121, the Court of Appeals said it was essential to the integrity and independence of judicial tribunals "that they should have the power to enforce their own judgment as to what conduct is incompatible with the proper and orderly course of their procedure." Expounding upon this generalization in *Ex Parte Bowles,* 164 Md. 318, the court said at p. 330:

"Criminal contempts of court embrace all acts committed against the majesty of the law or the dignity of the court, and the primary and controlling object sought to be obtained by punishment of such offenders is the vindication of public authority, of which the court is the em-

> bodiment, represented at any given time by the presiding judge."

In *Goldsborough v. State, supra,* we said that a contempt, viewed in a narrow sense, is a despising of the authority, justice, or dignity of the court; and that in a more general sense, a person whose conduct tends to bring the authority and administration of the law into disrespect or disregard, interferes with or prejudices parties or their witnesses during litigation, or otherwise tends to impede, embarrass, or obstruct the court in the discharge of its duties, has committed a contempt.

Nothing Muskus did or said at the Sorrell trial constituted, in our opinion, conduct properly punishable as a direct criminal contempt of court within the contemplation of these governing precepts of law. In so concluding, we fully realize the inadequacy of a cold record to depict such possible elements of misbehavior or otherwise contemptuous conduct as facial expressions, physical gestures, tone or inflections of voice, or manner of speaking. We recognize that even the most faithful transcript of record cannot capture a lawyer's attitude, his demeanor, the tone of his conduct at the trial. And we recognize that the nicest of words can on occasion take on a contemptuous flavor not revealed by the record. That a cold record is deficient in these important particulars does not mean that appellate courts must, in reviewing contempt citations, rely totally upon the fairness and objectivity of the presiding judge. Experience has shown that trial judges have on occasion abused their contempt powers, and we think such an abuse is readily evident in this case.

Judge DeBlasis's first contempt citation was, as heretofore indicated, based on his finding that Muskus frequently debated the court's rulings, although warned not to do so. In *Fisher v. Pace,* 336 U. S. 155, the Supreme Court held that it is the duty of counsel to abide by the court's rulings, even if erroneous, since any other procedure "would result in mockery of our trial courts and would destroy every concept of orderly process in the

administration of justice." At 162. But it later stated in *In Re McConnell*, 370 U. S. 230, that while it is necessary that a judge have the power to protect himself from actual obstruction in the court room, "it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases." At 236. Further, in *McConnell*, the court said:

> "The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty." (At 236)

Just where zealous trial advocacy shades into contempt of court has always been a troublesome question. Where a lawyer's persistence in debating a judge's ruling, even an erroneous one, becomes an actual disruption to the trial judge in the performance of his judicial duties, where he persists in defying the judge's order to desist, where the lawyer's persistence in debating the court's ruling becomes incompatible with the proper and orderly course of the trial proceeding, where it amounts to a despising of the court's authority and a real obstructive impediment to the court in its administration of justice, then such persistence may constitute a contempt. Compare *Gallagher v. Municipal Court*, 192 P. 2d 905 (Cal.), where the court observed that intemperate behavior in the course of a trial lessens the mastery of the trial judge over the progress of the proceeding and thus tends to obstruct the course of the trial. That such a degree of persistent disagreement with the court's rulings as to amount to contemptuous conduct was not reached in this case is to us too plain to require extended discussion. At most, Muskus was mildly persistent. That he may have been tedious in the presentation of his case in the eyes of the court and tried the court's patience, as Judge De-Blasis stated, is hardly ground for finding him in direct criminal contempt of court.

In his opinion Judge DeBlasis stated that Muskus was arrogant and wilfully disobedient through the entire trial, although on reconsideration he later stated that Muskus's conduct was "somewhat less than antagonistic." To support his conclusion, Judge DeBlasis simply referred to a number of pages in the transcript without delineating or specifying the instances of arrogance or wilful disobedience to which he had reference. We see nothing on those pages making the alleged arrogance or wilful disobedience self-evident; indeed, nothing appears on any of these pages to suggest even a trace of arrogance, insolence or wilful disobedience on Muskus's part. Nor does anything appear on the face of the record which even remotely suggests that Muskus's conduct was in any sense boisterous, that he was hostile, defiant, or disrespectful, or that his words reflected on the integrity of the court. On the contrary, the record in its entirety portrays Muskus as a polite, respectful, well-prepared and resourceful lawyer. In such circumstances, we do not think that Judge DeBlasis's general and unparticularized statement that Muskus was arrogant and wilfully disobedient lends any support to his conclusion that Muskus's persistence in debating the court's rulings constituted contempt of court. See *Phelan v. People of Guam,* 394 F. 2d 293 (9th Cir.) ; *In Re Hallinan,* 459 P. 2d 255 (Cal.) *Raiden v. Super. Ct.,* 206 P. 2d 1081 (Cal.).

In light of the background against which the first contempt citation was cast, we don't think that Muskus's failure to promptly obey the court's order to return to the trial table constituted a contemptuous act. While undoubtedly Muskus should have sat down when Judge DeBlasis ordered him to do so, the circumstances were such, we think, as failed to present a legally sufficient basis upon which to find a contempt citation.[4]

We observe by way of conclusion that while trial judges

4. In reviewing contempt citations, we do not weigh the evidence but only assess its legal sufficiency. *Kandel v. State,* 252 Md. 668. Of course, the proper standard of proof in a criminal contempt case is proof beyond a reasonable doubt. *Goldsborough v. State, supra,* at 358.

362

must be given wide latitude to punish contemptuous conduct, they must ever be on guard against confusing offenses to their sensibilities with obstructions to the administration of justice. See *Brown v. United States,* 356 U. S. 148.

> *Order dated July 23, 1970 citing Eugene Muskus in contempt on two occasions vacated; costs to be paid by the County Council of Prince George's County. Mandate to issue forthwith.*