**UNITED STATES of America Plaintiff-Appellee,**

**v.**

**Scott CAMIL, Alton C. Foss, Frank Hall, John W. Kniffin, Stanley K. Michelson, William J. Patterson and Donald R. Purdue, Defendants-Appellants.**

**No. 73-2973.**

United States Court of Appeals, Fifth Circuit.

July 17, 1974.

---

Larry G. Turner, Gainesville, Fla., Doris Peterson, Nancy Stearns, Morton Stavis, Center for Constitutional Rights, New York City, Cameron Cunningham, Brady S. Coleman, Austin, Tex., for defendants-appellants.

William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., Robert A. Dierker, Sp. Atty., Robert W. Merkle, Washington, D. C., for plaintiff-appellee.

Before GODBOLD, SIMPSON and INGRAHAM, Circuit Judges.

SIMPSON, Circuit Judge:

Each of the seven appellants was convicted of criminal contempt of court, in violation of Title 18 U.S.C. § 401(1) [1] and summarily punished pursuant to Rule 42(a), F.R.Crim.P., for contempt committed in the actual presence of the court [2] in the course of an unruly outbreak in the courtroom. Imposition of sentence was suspended with unsupervised probation to continue for the duration of the trial of the criminal charges.[3] The allegedly contemptuous behavior occurred during a pretrial hearing in the case of United States v. John K. Briggs, et al. See Note 3 supra. When the trial ended with a jury verdict of acquittal as to all defendants, the probation imposed was by its terms thereupon concluded. Nevertheless, this appeal was taken from the contempt convictions of six defendants and one spectator.

## I.

The controversy on appeal centers largely around the question of the mootness *vel non* of the appeals from the contempt convictions. Relying principally upon St. Pierre v. United States, 1943, 319 U.S. 41, 63 S.Ct. 910, 87 L. Ed. 1199, the government argues that completion of the probationary sentence together with the acquittal verdict in the underlying criminal case moots the challenge to the contempt convictions. In *St. Pierre* the Court held that completion of a six month sentence for contempt prior to argument on the merits of the appeal from the contempt conviction rendered the appeal moot, saying "the case is moot because, after petitioner's service of his sentence and its expiration, there was no longer a subject matter on which the judgment of this

---

1. Title 18 U.S.C. § 401(1) provides, in pertinent part, that:
   A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; . . .

2. F.R.Crim.P. 42(a) provides:
   Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

3. The upcoming trial was that of the group originally referred to as the "Gainesville Eight", later as the "Gainesville Seven", charged with conspiracy to violate Title 18 U.S.C. § 2101 in connection with the Republican National Convention at Miami, Florida, in August 1972. One, Scott Camil, was also charged with substantive violations of Title 18 U.S.C. § 231(a)(1) and Title 26 U.S.C. §§ 5861 and 5871. As noted in the text *infra*, that trial resulted in an acquittal of all defendants as to all charges.

Court could operate".[4] The appellants counter that *St. Pierre* must be considered in light of the interpretation placed on it by Sibron v. New York, 1968, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917. We agree. While *Sibron* did not overrule *St. Pierre*, the Court there cautioned that *St. Pierre* "must be read in [the] light of later cases to mean that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." Id. at 57, 88 S.Ct. at 1900, 20 L.Ed.2d at 931–932.

Our task of ascertaining whether any such "collateral consequences" may result from the contempt convictions below is simplified by the recent decision of this Court in United States v. Schrimsher. In re Butts, Attorney at Law, 5 Cir. 1974, 493 F.2d 842, which is for practical purposes on all fours with the case at bar. There the appeal was by Butts, an attorney, from a finding of contempt and sentence to be confined during the noon recess of a case on trial. The incident arose during the cross-examination of a prosecution witness by Butts, defense when Butts exhibited a color photograph to the witness. The judge asked Butts to mark the photograph as an exhibit and when Butts indicated that he did not want to do so the judge interrupted and demanded that the photograph be marked. Butts' offer to comply was done in a manner considered argumentative by the judge who retired the jury and resumed the argument with Butts, finally ordering the marshal to put Butts in jail and to keep him there until 1:30 P.M., about an hour later. Though Butts did not specifically ask for a stay of execution, he expressed his desire and intent to prosecute an appeal from the court's order. The judge on his part insisted that Butts was going to jail to be held there until 1:30 P.M. and there was thus no way that Butts could have secured review prior to the expiration of his sentence. We therefore held the mootness doctrine inapplicable.

Judge Rives writing for this Court pointed out the possible collateral consequences to Butts in the following language:

"Another qualification to the *St. Pierre* doctrine of mootness lends additional support to our rejection of the government's mootness argument. In *Sibron*, the Court stated that *St. Pierre* 'must be read in light of later cases to mean that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.' 392 U.S. at 57 [88 S.Ct. 1889]. Butts' conviction for contempt presumably could be used for impeachment and sentencing purposes in any future criminal proceeding. This conviction would be especially damaging if Butts were ever again accused of being in contempt of court. Conviction for contempt of court could also have serious adverse career consequences for Butts. His conviction could provide a basis for disciplinary action by a bar association. Opportunities for appointment to the bench or to other high office might be foreclosed as a result of this blot upon his record. The conviction might damage Butts' reputation in the legal community, and this in turn might affect his ability to attract clients and to represent them effectively, especially in open court. In light of these possible collateral consequences, Butts' appeal is not 'abstract, feigned, or hypothetical' so as to justify dismissal for mootness. See *Sibron*, supra, 392 U.S. at 57 [88 S.Ct. 1889]." (Footnotes omitted).[5]

---

4. To like effect, see our cases of Taylor v. United States, 5 Cir. 1969, 410 F.2d 392, and Murrell v. United States, 5 Cir. 1958, 253 F.2d 267, where fines summarily assessed for contempt were fully paid and the appeals thereafter attempted were held to be mooted.

5. See also Murray v. Wainwright, 5 Cir. 1971, 450 F.2d 465, 467–468, where we held following *Sibron* that the government has the burden of showing "that there is no pos-

**228**

Similar possible adverse consequences to the appellants may be envisioned. One of the appellants is enrolled as a law student at the University of Florida, and the appellants' brief points out the likelihood that the contempt conviction may endanger his admission to the Florida Bar as well as his right to practice in other states. The possible future use of the contempt conviction for impeachment and sentencing purposes in any future criminal proceedings is applicable to each of the appellants.

We hold therefore that this appeal is not barred by mootness.

## II.

■ The transcript of the proceedings below discloses to some extent the apparent basis for the contempt convictions, although the trial judge failed to certify as required by Rule 42(a), that he saw or heard the conduct constituting the contempt. His order of contempt did not recite the facts as the Rule directs. The record basis for the contempt adjudications may be summarized as follows. During a pretrial hearing before the trial judge in United States v. Briggs, et al., see Note 3 supra, a trial involving each of the appellants other than Frank Hall, a disturbance in the rear of the courtroom came to the attention of the judge, who inquired from the bench as to the identity of the noisemaker. Two Deputy Marshals responded by identifying a spectator named Klim. Mr. Klim was brought before the judge and held in contempt and fined $25.00 despite his denial that he was the source of any interruption. Another spectator informed the judge that Klim could not have done it and identified still another spectator, the appellant Frank Hall, as the culprit. One of the defendants present at the hearing acting as his own counsel then accused the marshals of lying to the court in the identification of Klim, and another of the defendants spoke up with a like ac-

cusation. An argument ensued between the defendants and the deputy marshals, with all of the defendants present eventually asserting their belief in the marshals' lack of veracity. About this time Hall volunteered that he knew the deputy marshals had misidentified Klim because he was himself the creator of the original disturbance. The judge called a recess and retired to his chambers with counsel, directing that Hall, Klim and the defendants including Patterson, who was acting as his own counsel, be held in custody of the marshal pending the court's further order. The pros and cons of the incident and appropriate punishment for the putative contemnors were discussed with counsel in chambers. It was necessary for the court to ascertain the names of those adjudged in contempt for the record. After an interval court and counsel returned to the courtroom whereupon the court vacated the contempt citation with respect to Klim and adjudged Hall and each of the six defendants present, Camil, Foss, Kniffin, Michelson, Patterson, and Purdue guilty of contempt of court and placed each on unsupervised probation for the duration of the upcoming trial.

■ As indicated above, no certificate in compliance with Rule 42(a), F.R.Crim.P., was made by the trial judge although he stated that he was proceeding against the contemnors pursuant to Rule 42(a). We are left to speculate as to the scope of his observation. We have had occasion to hold, Widger v. United States, 5 Cir. 1957, 244 F.2d 103, 106–107, that the requirements of Rule 42(a) must be strictly complied with and that:

> "By its terms, a criminal contempt may 'be punished summarily' only 'if the judge certifies' that he witnessed the alleged contemptuous conduct and that it was committed in his actual presence. The rule further provides that the order must 'recite the facts'. This record contains no certificate at

sibility that any collateral legal consequences will be imposed on the basis of the chal-

lenged conviction[s]." 450 F.2d 468, Note 2.

all by the judge and the order does not recite any fact but merely the conclusions of the Court.

"This rule providing for punishment of contempts summarily must be given a 'narrow construction' providing, as it does, for punishment without affording the accused 'the normal safeguards surrounding criminal prosecutions'; it being plain from the history of contempt procedures that the courts and congress have demonstrated a definite 'plan to limit the contempt power to "the least possible power adequate to the end proposed"'. It is, threfore, essential that courts proceeding summarily 'must be meticulously careful to observe * * * procedural * * * safeguards'. While it appears from the record as a whole that the contemptuous conduct was in the presence of the Court, no certificate was signed by the Judge as required by the rule, and the remaining portions of the record can be considered only as assisting the Court in construing the terms of the certificate." [6]

*Our holding in Widger* precludes consideration of this appeal in its present posture on the merits.

The decided cases offer us optional courses of action at this point, in view of the absence of the certificate under Rule 42(a). First, we can take the action this Court recently followed in United States v. Anthony Frederick Vano, et al. * * * In Re: Herbert Shafer, etc., 1974, 496 F.2d 1195 [No. 73–3098, preliminary order, April 18, 1974, final order, July 3, 1974] where limited remand was ordered to afford the trial court an opportunity to issue and forward the necessary certificate within 30 days from the date of our order. In that case the certificate was timely filed and we later affirmed per curiam without opinion under Rule 21.[7]

Our second alternative is to follow the procedure used by the *Schrimsher. In re Butts*, supra, panel and simply reverse and render on the basis of the initial failure of the trial judge to make the requisite Rule 42(a) certificate.[8] Judge Rives' explanation in the *Schrimsher* opinion of the reasons for the action taken was in part:

"From the sentence imposed by the judge in this case, it is clear that he was primarily concerned with the preservation of order in the courtroom during the trial in which Butts was participating. Since that trial is long since concluded, we think a proper disposition of this case is to reverse the order of contempt and to dismiss the proceedings against Butts."

This language applies with precision to the situation in the instant appeal. That the primary purpose of the trial judge below was to preserve order, to stake out limits between proper and im-

**6.** Judge Cameron, writing for this Court, cited in support of this holding Cammer v. United States, 1956, 350 U.S. 399, 404–405, 76 S.Ct. 456, 458, 100 L.Ed. 474, and two 9th Circuit cases: Yates v. United States, 9 Cir.1955, 227 F.2d 848, 850, and Hallinan v. United States, 9 Cir. 1950, 182 F.2d 880, 882.

**7.** Fifth Circuit Local Rule 21. See NLRB v. Amalgamated Clothing Workers of America, 5 Cir. 1970, 430 F.2d 966.

**8.** This was also the procedure followed by the Second Circuit in Pietsch v. President of the United States, 2 Cir. 1970, 434 F.2d 861, opinion by Mr. Associate Justice Tom Clark, sitting with that Circuit by designation. Mr. Pietsch's contempt sentence was completely executed at the time the Court of Appeals considered the appeal therefrom, the trial judge having originally fixed Pietsch's punishment at 10 days in prison, but later the same day having "commuted" it to time already served. The fact that the sentence was served in its entirety, so that there was really nothing to remand, appears to have been an implicit factor influencing the court to reverse, rather than to remand, in the face of a defective Rule 42(a) certificate. Pietsch's contemptuous conduct was similar in nature to that involved in the instant case: he created an unseemly disturbance to proceedings in open court by unruly and boisterous behavior, insisting incorrectly that he was due for a hearing on a written demand he had sent to the trial judge demanding issuance of an injunction against the war in Vietnam.

proper conduct on the part of defendants and spectators in the trial about to be commenced, is, we think, fully demonstrated by the nature of the punishment imposed for contempt: Suspended sentences with unsupervised probation expiring at the end of the trial. That purpose has been served. The period of probation has been satisfactorily terminated. We can conceive of no more futile charade than our permitting the court below to make a Rule 42(a) certificate so as to enable us to review the merits of the contempt convictions on appeal.

Reversed and rendered.