635 A.2d 71

**Charles Leon THOMAS, Jr.,**

v.

**STATE of Maryland.**

**No. 647, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 6, 1994.

Certiorari Denied May 13, 1994.

**48**

Nancy C. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Jonathan R. Krasnoff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County of Rockville, on the brief), for appellee.

Submitted before ALPERT, FISCHER and MOTZ, JJ.

MOTZ, Judge.

Appellant, Charles Leon Thomas, Jr., was charged with unauthorized use of a motor vehicle. Appellant appeared in the Circuit Court for Montgomery County for a hearing on a bench warrant. During that hearing, the circuit court twice held appellant in contempt of court; two thirty day sentences

were imposed on appellant. On appeal, appellant raises a single question:

Did the lower court improperly hold appellant in direct contempt of court?

The facts giving rise to this appeal are straight forward and undisputed. On April 13, 1993, appellant appeared before the circuit court, as a result of a bench warrant. The judge initially asked appellant why he had failed to appear in court on February 12, 1993. When appellant responded that he didn't know where he was on that date, the court asked, "what is the State's position on bond?" The prosecutor responded that a cash bond was suggested but "it doesn't have to be a high cash bond." Shortly thereafter, the following colloquy took place:

[DEFENSE COUNSEL]: Your Honor, Mr. Thomas tells me that he is living with his aunt again in Silver Spring. Or Wheaton?

DEFENDANT: No. Wheaton, Maryland.

[DEFENSE COUNSEL]: In Wheaton. I'm sorry.

THE COURT: All right.

DEFENDANT: 3209 Janet Road.

[DEFENSE COUNSEL]: Janet Road in Wheaton.

THE COURT: 3209. Now, are you on a sentence somewhere else?

DEFENDANT: No, no.

THE COURT: I'm sorry. I realize I am interrupting your busy schedule bringing—

DEFENDANT: I'm all right, man. Man, what you—

THE COURT: —you here today, Mr. Thomas, but we have a little business to try to attend to—

DEFENDANT: Yes, you know.

THE COURT: —if it is all right for you. Now, you either are or you are not on a sentence somewhere else. Are you?

DEFENDANT: I am not on a sentence nowhere else.

**50**

THE COURT: You are not on a sentence, all right. I think I will set a $3,500.00 cash bond.

DEFENDANT: That is it?

THE COURT: That is it.

DEFENDANT: Damn, so small. Fuck that judge, man.

THE COURT: Bring him back.

DEFENDANT: —fucker.

THE COURT: Bring him back. Sir, I heard what you said and—

DEFENDANT: So what, man. You—

THE COURT: —so that the record is clear I am holding you in contempt of this Court and I am sentencing you to 30 days in jail for contempt. You can take—

DEFENDANT: Yes, whatever.

THE COURT: —it from there. Thirty days on this case with—

DEFENDANT: Whatever. Whatever.

THE COURT: All right, fine. One more whatever out of you, sir, and you are going to get another 30 days, all right.

DEFENDANT: Whatever.

THE COURT: That is it, 30 more. Sixty days. Take him away.

DEFENDANT: Whatever. That's 90, ain't it?

THE COURT: Sixty will be enough. So that the record is clear on this just in case the recorders didn't .pick up his language he indicated that I could go and [have] intercourse myself. He didn't use that word but another word, a four letter word. Clearly I could hear it.

Then when he came back out in here he had another what I consider to be contemptuous attitude toward this Court. Good luck in representing him, Mr. PD.

DEFENDANT: That's just bullshit, man.

(Whereupon, the hearing was concluded.) [1]

Appellant asserts that reversal is required because (1) he was not given "an opportunity to speak" prior to imposition of the first finding of contempt, and, if given that opportunity, he might "well have apologized to the court;" (2) the second contempt finding "was an arbitrary and oppressive application of the court's criminal contempt power;" and (3) contrary to Md.Rule P3(b), there was no written order reciting the facts and the basis for the court's findings.

At issue in this case are two judgments of direct, criminal contempt, arrived at after summary proceedings. "A 'direct contempt' means a contempt committed in the presence of the court, or so near to the court as to interrupt its proceedings." Md.Rule P1a. It is to be contrasted with a "constructive contempt," which is a "contempt which was not committed in the presence of the court, or so near to the court as to interrupt its proceedings." Md.Rule P1b. A criminal contempt is "punishment for past misconduct which may not necessarily be capable of remedy" and so its penalty need not contain a purging provision. *State v. Roll and Scholl*, 267 Md. 714, 728, 298 A.2d 867 (1973). On the other hand, civil contempt proceedings are "remedial" and "intended to preserve ... the rights of private parties" and "coerce future compliance" and so a penalty for civil contempt "must provide for purging." *Id. See generally Betz v. State*, 99 Md.App. 60, 635 A.2d 77. Summary punishment of direct, criminal contempt, *i.e.* without any right to notice, opportunity to be heard, right of counsel, or trial by jury, is an ancient right designed to fill the "need for immediate penal vindication of the dignity of the court...." *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925). Because it is contrary to the usual procedure constituting due process, *id.*, it "always,

---

**1.** Although it is not absolutely clear from the record before us, it appears from the docket entries that shortly after the imposition of the contempt sentence appellant was released on a $3,500 bond. On May 25, 1993, appellant apparently entered a guilty plea to the underlying offense, unauthorized use of a motor vehicle, and was sentenced to three years of supervised probation.

and rightly, is regarded with disfavor," *Sacher v. United States,* 343 U.S. 1, 8, 72 S.Ct. 451, 454, 96 L.Ed. 717 (1952) and to be used only in "unusual situations ... where the instant action is necessary to protect the judicial institution itself." *Harris v. United States,* 382 U.S. 162, 167, 86 S.Ct. 352, 356, 15 L.Ed.2d 240 (1965). This does not mean, however, that in order to constitute direct, criminal contempt punishable by summary proceedings the contemptuous conduct must "bring to a halt the proceedings in progress." *Mitchell v. State,* 320 Md. 756, 763, 580 A.2d 196 (1990). Rather,

> [i]t takes but a moment of time to hurl a vile epithet at a judge or jury, but such conduct in a court room will not be tolerated, and may properly be addressed summarily.

*Id.*

█ It seems clear that the language that formed the basis for the first judgment of contempt, *i.e.,* "Fuck that judge" and calling the judge a "fucker," did, in fact, constitute precisely the sort of "vile epithet" that is properly considered a direct, criminal contempt. Indeed, appellant does not argue to the contrary. What appellant asserts is that he was not given a "brief opportunity" for allocution "prior to imposition of the sentence" for the first contempt here, as was his asserted right under *Mitchell v. State, supra.* He claims that if he had been given this opportunity, he "might well have apologized to the court." This argument is not persuasive for two reasons.

First, although the Court of Appeals in *Mitchell* did hold that in that case the "alleged contemnor" should have been given a "brief opportunity for allocution" prior to imposition of sentence for the alleged direct, criminal contempt, the court expressly noted that due process did not require "that an alleged contemnor must, in every instance, be given" this opportunity. 320 Md. at 768, 580 A.2d 196. Rather, the *Mitchell* court specifically recognized:

> In some cases, affording a defendant an opportunity to speak in explanation of his conduct may only invite additional invective. Furthermore, where the conduct or speech is

as direct or unequivocal as it was in the case before us, there may be little or no room for helpful explanation. *Id.* at 768, 580 A.2d 196. The record clearly indicates that the case at hand was one in which affording the defendant an opportunity to speak only invited "additional invective" and the nature of his contemptuous speech left little room for "helpful explanation." Thus, this was not the sort of case in which the alleged contemnor must be given an opportunity for allocution before imposition of sentence.

Moreover, even if a "brief opportunity for allocution" was required prior to imposition of the sentence here, the transcript reflects that appellant was afforded such an opportunity. Indeed, appellant spoke, not once, but twice before sentence for the first contempt was imposed, and several times after that:

DEFENDANT: Damn, so small. Fuck that judge, man.

THE COURT: Bring him back.

DEFENDANT: —*fucker.*

THE COURT: Bring him back. Sir, I heard what you said and—

DEFENDANT: *So what, man.* You—

THE COURT: —so that the record is clear I am holding you in contempt of this Court and I am sentencing you to 30 days in jail for contempt. You can take—

DEFENDANT: *Yes, whatever.*

THE COURT: —it from there. Thirty days on this case with—

DEFENDANT: *Whatever. Whatever.*

(emphasis added). On none of these occasions did he "become contrite" or "effectively communicate an appropriate apology." *Id.* Instead, he continued his contemptuous behavior. For all of these reasons, appellant's first asserted basis for reversal is meritless.

■ His second, that the other contempt judgment was an "arbitrary and oppressive application of the court's criminal contempt power," is not so easily disposed of. The conduct

leading to the second contempt sentence was not as clearly contemptuous as that leading to the first contempt sentence. The "whatevers" were obviously annoying and far too casual to be appropriate in a judicial setting; however, it is impossible to conclude from the cold record alone that the "whatevers" constituted direct, criminal contempt. *See Roll and Scholl*, 267 Md. at 728, 298 A.2d 867; *Robinson v. State*, 19 Md.App. 20, 27, 308 A.2d 712 (1973). *See also, Bloom v. Illinois*, 391 U.S. 194, 205, 88 S.Ct. 1477, 1484, 20 L.Ed.2d 522 (1968) (citation omitted).

As we noted in another criminal contempt case, when concluding that the transcript did not support the finding of contempt:

> there are limitations [as] to what a court reporter may transcribe in particular situations. Thus, it may be in this case that the transcript does not reflect appellant's angry tone of voice, or a menacing demeanor, or possibly threatening or offensive gestures directed toward the court.

*Robinson*, 19 Md.App. at 28, 308 A.2d 712. If the circuit court had, in its order, included detailed findings as to why appellant's street talk, the "whatevers," required a court prohibition or that the "whatever" after the court prohibition was accompanied by the sort of threatening gestures, etc. outlined in *Robinson*, then we might be able to conclude that there was sufficient evidence for the second contempt judgment.

This is, of course, why the order of contempt required by Md.Rule P3b is so important. That rule specifically provides:

> Where a direct contempt is committed, the court *shall sign a written order to that effect.* The order shall recite the facts, be signed by the judge and entered of record. The order shall state which of the facts were known to the court of its own knowledge and as to any facts not so known, the basis for the court's finding with respect thereto.

Md.Rule P3b. (emphasis added). The purpose of the rule is to enable an appellate court to determine "whether a [direct, criminal] contempt has been committed and whether the court had jurisdiction to punish it," *Jones v. State*, 32 Md.App. 490,

497, 362 A.2d 660 (1976). *See also* Editor's note to Rule P3b. The rule requires: (1) a written order reciting the basis for the contempt finding and (2) that this order be "signed by the judge and entered of record." It has repeatedly been regarded as mandatory. *See Weaver v. State,* 244 Md. 640, 224 A.2d 684 (1966); *Jones v. State,* 61 Md.App. 94, 102, 484 A.2d 1050 (1984); *A.V. Laurins & Co. v. Prince George's County,* 46 Md.App. 548, 420 A.2d 982 (1980); *Jones v. State,* 32 Md.App. at 497–500, 362 A.2d 660; *Robinson,* 19 Md.App. at 25–29, 308 A.2d 712; *Muskus v. State,* 14 Md.App. 348, 358–61, 286 A.2d 783 (1972).

The conclusion that the requirements in Md.Rule P3b are mandatory is entirely consistent with the interpretation given by the federal courts to Fed.R.Crim.P. 42(a),[2] upon which Md.Rule P3b is based. *See Roll and Scholl,* 267 Md. at 735 n. 17, 298 A.2d 867. Thus, the federal courts have uniformly held the contempt order and contempt certificate required by Fed.R.Crim.P. 42(a) are mandatory and have refused to sustain a contempt judgment that is not supported by both a certificate and order that meet all the requirements of the rule. *See e.g., United States v. Robinson,* 922 F.2d 1531, 1533 & n. 4 (11th Cir.1991) (order defective as it failed to recite facts); *Matter of Contempt of Greenberg,* 849 F.2d 1251, 1254 (9th Cir.1988) (no certification); *United States v. Mars,* 551 F.2d 711, 715 (6th Cir.1977) (no certification); *In re Williams,* 509 F.2d 949, 959 (2d Cir.1975) (no certification or factual findings); *United States v. Camil,* 497 F.2d 225, 228 (5th Cir.1974) (no certification and order defective because it failed to recite facts); *United States v. Vano,* 496 F.2d 1195 (5th Cir.1974) (no certificate); *United States v. Marshall,* 451 F.2d 372, 376 (9th Cir.1971) (two contempt orders, neither adequate

---

**2.** Fed.R.Crim.P. 42(a) is similar, but not identical, to Md.Rule P3b. The federal rule provides:

**Summary Disposition.** A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered on the record.

because too general); *Pietsch v. President of United States,* 434 F.2d 861, 863 (2d Cir.1970) (order defective because it failed to recite facts), *cert. denied,* 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 (1971); *Tauber v. Gordon,* 350 F.2d 843, 845 (3rd Cir.1965) (order inadequate because too general).

With regard to the second contempt, none of the requirements of Md.Rule P3b were met. There were neither findings setting forth the basis for the contempt judgment nor a written order signed by the judge and entered in the record. Accordingly, we must reverse the second judgment of contempt.

■ The first contempt judgment, however, did in most respects comply with the rule. There seems to be no reason why a court can not dictate to the court reporter findings sufficient to constitute a basis for a criminal contempt judgment and thus satisfy the "written order" requirement. The trial judge did this with regard to the first contempt. His oral findings dictated to the court reporter certainly set forth the basis of the first contempt judgment adequately. The trial judge did not, however, satisfy the remaining requirement of the rule, *i.e.,* sign the order of contempt and have that signed order entered in the record. For this reason, the first judgment of contempt also cannot stand. In most prior instances in which there was a failure to comply in any respect with Md.Rule P3b, the contempt judgment has been simply reversed or vacated, without any opportunity afforded the trial court on remand to fashion an order that complied with the summary procedure. *See Weaver,* 244 Md. at 645, 224 A.2d 684 (judgment reversed); *Jones,* 61 Md.App. at 102, 484 A.2d 1050 (judgment reversed); *Jones,* 32 Md.App. at 500, 362 A.2d 660 (judgment reversed); *Robinson,* 19 Md.App. at 29, 308 A.2d 712 (judgment vacated); *Muskus,* 14 Md.App. at 362, 286 A.2d 783 (order vacated). *But see A.V. Laurins,* 46 Md.App. at 566–67, 420 A.2d 982 (remand for constructive contempt proceedings, if warranted); *Pearson v. State,* 28 Md.App. 464, 483 & n. 9, 488, 347 A.2d 239 (1975) (remand for constructive contempt proceedings). In none of these cases, however, did

the defendant "hurl a vile epithet" at the court. Indeed, with a single exception, none of them involve a record like that at issue here, containing clear and unmistakable evidence of direct criminal contempt. *Compare Jones*, 61 Md.App. at 100, 484 A.2d 1050 (conduct not direct contempt); *Jones*, 32 Md. App. at 490, 362 A.2d 660 (conduct not direct contempt); *Robinson*, 19 Md.App. at 28–29, 308 A.2d 712 (conduct not contemptuous); *Muskus*, 14 Md.App. at 361, 286 A.2d 783 (conduct not contemptuous).

The lone exception is *Weaver v. State*, 244 Md. 640, 224 A.2d 684 (1966). There, the defendant and her mother were charged for separate violations of the housing regulations. *Id.* at 642, 224 A.2d 684. "When the defendant, who had not been summoned, appeared in court on July 15, 1965 to represent her invalid mother, who had been summoned, the defendant sought to have the case against her heard with that of her mother." *Id.* This was not done and, instead, appellant was orally told by the Municipal Court of Baltimore City to be in court on August 19. *Id.* The defendant "had a prior engagement on the same day that she wanted to keep, consulted an attorney and, on his advice, left the city and failed to appear in the municipal court as scheduled;" when she did appear two weeks later, she was orally cited for contempt, "tried forthwith and fined $25.00." *Id.* The Court of Appeals held that her disobedience of the lawful order of the municipal court constituted direct, criminal contempt, under then Md.Code Art. 26, § 118 and the Maryland rules, but reversed, without specific remand for further proceedings, because that lower court had failed to sign "a formal order stating the reason for the citation of contempt" or "giv[ing] notice to the alleged contemnor by way of summons, attachment or otherwise, and [should] have allowed a reasonable time for the filing of an affidavit of defense." *Id.* at 645, 224 A.2d 684.

*Weaver* is distinguishable from the case at hand in three important respects. First, it does not appear that the possibility of remand was raised by the parties or considered by the court. Secondly, the *Weaver* Court found other errors in the lower court's procedure in addition to its failure to sign a

formal order of contempt; these other errors are not even alleged here. The only other claim of error that is alleged in the present case, failure to permit appellant a "brief opportunity for allocution," we have held totally meritless. Finally, and perhaps most importantly, even in holding that disobedience of the oral order was direct contempt, the *Weaver* court expressly recognized that this contempt was not "committed in the presence of the court or ... so near thereto as to interrupt the proceedings." *Id.* at 644, 224 A.2d 684.[3] In contrast, the contempt here was not only committed in the "presence of the court" but was an unprovoked "vile epithet" that is totally inconsistent with the respect properly accorded judicial officers when acting in their judicial capacity. In similar circumstances, courts in other states have upheld a contempt judgment without *any* signed order, *People v. Baxter*, 50 Ill.2d 286, 278 N.E.2d 777, 779 (1972) (contempt judgment for stating in petition that court acted as a "Ku Klux Klan, Gestapo Setup, Jim Crow Justice and a Crime Syndicate" upheld without signed order, even though that would have been "better practice"); *see also, State ex rel. Beckett v. Stockett*, 26 Or.App. 167, 552 P.2d 838, 839–40 (1976) (contempt judgment for shouting obscenities at judge at pretrial hearing upheld even though defendant was not forewarned that his behavior would result in finding of contempt); even when such an order was, as here, required. *Saunders v. State*, 319 So.2d 118, 124 (Fla.Dist.Ct.App.1975) (contempt judgment for calling judge "son of a bitch" upheld, even though, contrary to state rule, there was no recital of facts because "transcript speaks for itself").

The distinctions between the case at hand and *Weaver* lead us to conclude that we are not required simply to reverse or vacate here and permit appellant's conduct to go unpunished. This conclusion is buttressed by the fact that three years after *Weaver*, the Court of Appeals affirmed a direct contempt

---

3. Indeed, the statutory basis for the *Weaver* holding has been repealed. *See* 1972 Md.Laws, Chap. 181. It well may be that under present law the conduct at issue in *Weaver* would not constitute direct, criminal contempt. *See Jones*, 61 Md.App. at 100–01, 484 A.2d 1050.

judgment even though the written order was not signed or filed until six months after the oral finding of contempt. *See Kandel v. State*, 252 Md. 668, 669–70, 250 A.2d 853 (1969). *See also, Jones*, 32 Md.App. at 498, 362 A.2d 660 (noting that "no purpose" would have been served in that case "by remanding for compliance by the trial judge with the mandate of Rule P3" and thus at least implying that, in other cases, such a remand would be proper). In appropriate circumstances, the federal courts have vacated the judgment and remanded the matter to the trial court for the limited purpose of affording it an opportunity to issue the necessary order or certificate if it deems that appropriate. *See Mars*, 551 F.2d at 715 (deliberate and repeated refusal to obey a lawful court order); *Marshall*, 451 F.2d at 378; *Vano*, 496 F.2d at 1196 (record adequate to support contempt adjudication).[4] We believe that this is the appropriate course here.

JUDGMENT AS TO FIRST CONTEMPT VACATED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

JUDGMENT AS TO SECOND CONTEMPT REVERSED.

COSTS TO BE PAID ONE HALF BY APPELLANT AND ONE HALF BY MONTGOMERY COUNTY.

---

4. Moreover, although there are federal cases in which the failure to comply with Fed.R.Crim.P. 42(a) resulted in reversal without remand, in all of them the appellate court concluded that the underlying conduct was not contemptuous, *Robinson*, 922 F.2d at 1535; *Greenberg*, 849 F.2d at 1255; *Williams*, 509 F.2d at 960; *Pietsch*, 434 F.2d at 863–64; *Tauber*, 350 F.2d at 845, or the contempt sentence had been served and so little purpose would have been served by a remand. *Camil*, 497 F.2d at 229–30.