## A. V. LAURINS & COMPANY, INC. ET AL. v. PRINCE GEORGE'S COUNTY, MARYLAND

[No. 1, September Term, 1980.]

*Decided October 8, 1980.*

The cause was argued before MELVIN, WILNER and COUCH, JJ.

*John H. MacVey,* with whom was *Alan M. Perlman* on the brief, for appellants.

*Robert N. Stokes, Jr., Associate County Attorney for Prince George's County,* with whom were *Robert B. Ostrom, County Attorney for Prince George's County,* and *Michael O. Connaughton, Deputy County Attorney for Prince George's County,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

On November 30, 1979 the Circuit Court for Prince George's County, Maryland declared fraudulent a conveyance made between the appellants, A. V. Laurins & Company, Inc. and LAV Shell Company, Inc., in 1975. The Circuit Court imposed a lien upon the real property involved and appointed a trustee to sell the property. The Court also adjudged the appellants Laurins and Norman to be in contempt for their failure to appear at trial on July 31, 1979, pursuant to subpoenas. Each of the appellants was fined $2,000.00.

At a subsequent hearing the Circuit Court assessed attorney's fees of $1,500.00 against the appellants.

From these decisions of the Circuit Court the appellants appeal and present three questions:

"1. Did the Court below err in reaching conclusions not supported by the evidence of record; in ruling that the circumstances of this case shifted the burden of proof to the defendants; in ruling that defendants could not produce any evidence of any nominee agreement or any credible evidence of an antecedent debt; and in concluding that the conveyance of certain condominium units was fraudulent?

2. Did the Court below err in finding defendant Laurins and defendant Norman guilty of direct contempt of court when the evidence of record shows that defendants, if contemptuous, should have been charged with constructive criminal contempt requiring compliance with the procedures specified by Rule P4?

3. Was the assessment of $1,500.00 against defendants for attorney's fees for the entire case arbitrary, unreasonable, and capricious when the record shows that the County's motion for costs related only to discovery and that defendants did comply with the Court order for discovery?"

We find that the Circuit Court did not err in determining that the conveyance was fraudulent. The Court did err, however, in finding Laurins and Norman guilty of direct criminal contempt. Furthermore, the Court improperly determined the assessment of attorney's fees against the appellants.

The reasons for our findings and additional facts concerning this case will be presented in the discussion of the issues.

## I. — FRAUDULENT CONVEYANCE

The appellants request that we reverse the decision of the Circuit Court for Prince George's County which set aside the

conveyance of certain condominium units. We decline to follow this request and instead we affirm the finding that the conveyance was fraudulent as defined by Md. Com. Law Code Ann. § 15-207.

This provision states:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors."

A. V. Laurins & Company, Inc. (AVL Co.) was a Delaware corporation authorized to do business in the State of Maryland with offices at 8401 Connecticut Avenue, Suite 700, in Chevy Chase. Its corporate officers and directors were Aleksandrs V. Laurins, James G. Norman, and Charlene Baden. All of the stock of AVL Co. was owned by LAV Shell Company, Inc., a Maryland corporation with offices in the same Suite 700 and with the same corporate officers and directors as AVL Co.

As a management and real estate development corporation AVL Co. was the general partner in several limited partnerships. These partnerships included the Co-Op Development Limited Partnership (Development), formed in 1972 by AVL Co., and the National Mortgage Corporation (NMC). Development was formed to acquire, renovate, convert to condominium and sell a housing project known as Coronado Apartments in Adelphi, Maryland. In 1973 Development obtained legal title to the apartments and sold them as condominium units. Shortly thereafter ten of the individual purchasers involved in the condominium conversion filed complaints with the Prince George's County Landlord-Tenant Commission. They contended that certain sums paid to AVL Co. exceeded the amount permitted by the County Rent Control Law which became effective June 22, 1973.

Following hearings on the complaints the Executive Director of the Landlord-Tenant Commission issued an order directing AVL Co. to reimburse the ten complainants

552

various amounts totaling $2,065.44. The Executive Order was issued March 11, 1975.

Two days later, on March 13, 1975, AVL Co., as general partner of Development, conveyed Coronado condominium units 703A and 704A to LAV Shell Company, Inc. On March 14, 1975, Laurins and Norman, as officers of AVL Co., dated a document purporting to dissolve the limited partnership between AVL Co. and NMC. This document was notarized on May 29, 1975 by Charlene Baden. There was no signature on the document on behalf of the limited partner, NMC, nor was any certificate of cancellation recorded. The document itself purported to commit $13,350.00 of the cash assets of the limited partnership

> "as a reserve for its liabilities and transferred to Metropolitan Mortgage Bankers, Inc., for the purpose of payment of Accounts Payable, Warranties, the Noble lawsuit, the Rent Control Suit and other potential law suits."

Laurins and Norman were also corporate officers of Metropolitan Mortgage Bankers, Inc.

On April 1, 1975, the deed conveying condominium units 703A and 704A was recorded and transfer taxes paid. The deed bears the notation for mailing of 8401 Connecticut Avenue, Chevy Chase, Maryland. That same month, management of the Coronado units was taken over by Shannon & Luchs. This company, however, continued to make receipts and disbursements for the account of "A.V.Laurins" having received no notice of change of ownership. LAV Shell Co., Inc. did inform the Landlord-Tenant Commission in October, 1975 that AVL Co. had no assets with which to satisfy the rent reimbursement order. The Commission was also informed by LAV Shell that AVL Co. was no longer in business. More accurately the authorization for AVL Co. to do business in Maryland had been cancelled on December 16, 1974 by the State Department of Assessments and Taxation. AVL Co. had failed to file the required 1974 foreign ordinary business corporation personal property return.

Prince George's County filed a Bill of Complaint on January 5, 1976 to enforce the Executive Order against AVL Co., Laurins and Norman.[1] Ten days later Laurins moved to San Francisco. On September 13, 1977, the Circuit Court for Prince George's County entered judgment in favor of the County and against only the appellant AVL Co. in the amount of $2,065.34. No appeal was taken from this judgment.

The County returned to the Circuit Court on March 10, 1978, filing a Bill of Complaint against AVL Co., LAV Shell Co., Inc., Laurins, and Norman, to establish a fraudulent conveyance and impress a lien on real estate.

At the hearing on July 31, 1979, the County contended that the conveyance of March 13, 1975 was made with actual fraudulent intent to hinder, delay or defraud the County from satisfying the award of $2,065.34. The County presented evidence that the condominiums were assessed to LAV Shell Co., Inc., but that during a four year period from 1975 to 1979 the benefits of the property went to Laurins.

Charlene Baden testified for the defendants. She said that LAV Shell Co., Inc. never owned any units in Coronado, but that LAV Shell acted as "nominee" for Co-Op Mortgage Investment Associates (Co-Op), a corporation formed by AVL Co. and Wyoming Associates in 1973. Defense testimony indicated that Co-Op, acting through AVL Co., had borrowed $231,758.00 from NMC. This purported loan was documented by copies of sheets from Co-Op's record books, dated 1973. AVL Co. loaned this $231,758.00 to Pleasant Hill Associates, a limited partnership of which AVL Co. was the general partner. As general partner in Pleasant Hill Associates, AVL Co. agreed to repay the loan by assigning to Co-Op the AVL Co. interest in Development. At the time of the repayment agreement between AVL Co. and Co-Op, $90,000.00 was still due on the loan. Co-Op's interest in Development (the Coronado project) was valued by the defendants at $120,000.00. No notes or other evidence

1. Prince George's County enforces the orders of the Landlord-Tenant Commission by application of Prince George's County Code §§ 10-56, 13-142 (a), and 13-175 (b).

of bona fide debts incurred with valid consideration were introduced by the defendants. No nominee agreement was presented to indicate the proper relationship between Co-Op and LAV Shell Co., Inc.

Prince George's County asserted that a fraudulent conveyance occurred when the condominium units were transferred from Development to LAV Shell Co., Inc. in an arrangement with Co-Op. This conveyance did render AVL Co. insolvent and unable to reimburse the Coronado tenants.

The defendants at the hearing and the appellants in this appeal have argued that no fraud occurred in the transfer, but rather that the $90,000.00 antecedent debt was paid off by Co-Op's receiving assets from the dissolution of Development. Payment of Co-Op's loan took the form of $61,678.00 in notes receivable, cash of $3,600.00, and the condominiums which the appellants value at $26,200.00.

After assessing the evidence presented at the hearing, the chancellor ruled in favor of the County. Based on the continued disbursements from Shannon & Luchs to Laurins following the transfer of the deed from AVL Co. to LAV Shell Co., Inc., she determined:

> "[T]here was no real delivery even intended in this situation as no rights or duties with respect to the property were really changed, as the debtor retained the rents and possession of the property."

No evidence was found of any actual consideration passing from LAV Shell Co., Inc., the named grantee/nominee, to the grantor corporation. The chancellor did find in the interlocking relationship of the parties such circumstances that shift the burden to the defendants of establishing the bona fides of the transaction. *Berger v. Hi-Gear Tire & Auto,* 257 Md. 470, 263 A.2d 507 (1969). Based on the presented evidence the chancellor determined that the defendants did not meet their burden of proving either the validity of the conveyance or the formation of a resulting trust for the benefit of Co-Op. From the lack of adequate evidence that Co-Op paid the purchase price for the property and from the assumption that the property had risen in value from the

$26,200.00 prior to conversion, the chancellor found that "the consideration in this case was a mere bookkeeping fiction."

In view of all the facts and circumstances surrounding the transfer of the condominium units, the court found the conveyance was fraudulent. Viewing the evidence in a light most favorable to the prevailing party, we find no indication that the chancellor's decision was clearly erroneous. Md. Rule 1086. A finding of fact concerning the adequacy of consideration in an action to set aside a conveyance will not be disturbed when there was evidence to support the chancellor's conclusions. *Beccio v. Tawnmoore Apts.*, 265 Md. 297, 289 A.2d 311 (1972). Thus, the conveyance of the condominium units from AVL Co. to LAV Shell Co., Inc./Co-Op must be set aside as violative of Md. Com. Law Code Ann. § 15-207.

The party alleging that a conveyance is fraudulent bears the burden of proving the fraud. *Berger v. Hi-Gear, supra; Sullivan v. Dixon,* 280 Md. 444, 373 A.2d 1245 (1977). Evidence of certain circumstances, however, may shift the burden to the grantee of a conveyance to prove that he is a bona fide purchaser for value. *Kline v. Inland Rubber Corp.,* 194 Md. 122, 69 A.2d 774, 780 (1949); *Berger v. Hi-Gear, supra* at 475. This procedure has long been recognized by the Maryland courts. In *McCauley v. Shockey,* 105 Md. 641, 66 A. 627 (1907), the Court of Appeals stated:

> "From the nature of the case, a creditor attempting to set aside a conveyance as fraudulent can seldom prove as an independent fact the knowledge of or particpation in the fraud of the grantor by the grantee. That knowledge or participation must be gathered from the various facts and incidents composing the transactions and its environment. The primary presumption here as elsewhere is in favor of innocence and good faith, but a state of facts may be shown which will negative that presumption and cast upon the grantee the burden of proving his good faith and non-participation in the fraudulent purpose of the grantor." *Id.* at 646.

In the previous cases the burden of proof was shifted to the grantee because the individual defendant-grantee chose not to appear at the hearing (*Berger*), and because of concealment of the ownership of property and the purpose of a mortgage (*Kline*). In the present case the chancellor shifted the burden of proof after she found "suspicious circumstances" in the relationship between the grantor and the grantee. By our examination of the record, with its description of the business of the parties and their corporations, we find sufficient evidence to sustain the chancellor's decision to place the burden of proof on the defendants.

Moreover, we agree with the chancellor that the defendants failed to meet their burden and prove the validity of the conveyance. Where an antecedent debt is asserted as consideration for a transfer and as a defense to a charge of fraud, the party bearing the burden of proof must demonstrate the adequacy of the consideration and the good faith of the party. *Drury v. State Capital Bank,* 163 Md. 84, 88, 171 A. 176 (1932).

Generally an antecedent debt constitutes valid consideration so as to avoid liability under § 15-207. *Sullivan v. Dixon,* 280 Md. 444, 373 A.2d 1245 (1977). The Court of Appeals, however, has further stated:

> "On the other hand, where a transfer has been made for a valuable consideration the Court may possibly still find fraudulent intent from other circumstances, such as insolvency or heavy indebtedness of the grantor, litigation pending or anticipated, relationship between the parties, concealment or secrecy, and transfer of the debtor's entire estate. None of these indicia of fraud alone necessarily proved fraud; but they do warrant an inference of fraud, especially where several of the indicia concur."

*Savings Bank v. Sauble,* 183 Md. 628, 631, 39 A.2d 862 (1944). See also *Johanna Farms v. Elliott Equip. Co.,* 278 Md. 137, 148, 360 A.2d 436 (1976).

In the present case the chancellor had sufficient evidence reasonably to infer the existence of a fraudulent conveyance. The defendants did not explain AVL Co.'s insolvency, their interlocking business relationships and the loose bookkeeping system to the satisfaction of the chancellor, and thus the validity of the conveyance remained questionable. The chancellor could then reasonably make her conclusion.

The Court of Appeals traditionally has sustained the voiding of questionable transfers between businesses owned by the same parties. *Sakelos v. Hutchinson Bros.*, 129 Md. 300, 99 A. 357 (1916). More recently we have been willing to disregard the corporate facades used by a party to avoid payment to creditors. *Colandrea v. Colandrea*, 42 Md. App. 421, 401 A.2d 480 (1979).

Thus, the decision of the Circuit Court for Prince George's County to set aside the conveyance of the condominium units must be affirmed.

## II — CONTEMPT

### (A) SERVICE OF SUBPOENAS

The individual appellant Laurins moved to San Francisco on January 15, 1976. Norman was also living in California by 1979. A protective order was granted in favor of Laurins and Norman which permitted them to remain in California during the discovery phase of the litigation. On July 26, 1979, however, subpoenas *duces tecum* were issued for Laurins and Norman, requiring their appearance at the trial scheduled for July 31, 1979. Laurins and Norman were directed by the subpoenas to bring with them various documents relating to their businesses including records revealing the assets of AVL Co. and LAV Shell Co., Inc., and concerning the dissolution of Development.

These subpoenas *duces tecum* were served upon the defendants' counsel of record on July 27, 1979. Laurins and Norman did not appear at the trial on July 31, 1979. Prince George's County moved at the beginning of the trial that Laurins and Norman be held in contempt of court and that

a writ of attachment be issued for them. Responding to defense counsel's questioning of the sufficiency of the subpoenas' service, the chancellor ruled that Laurins and Norman had been served.

We agree with the chancellor that under Maryland Rules of Procedure the service of a subpoena *duces tecum* upon counsel for parties is sufficient service to require their presence at trial and their production of the required documents.

Md. Rule 306 a. 1. provides in part:

"A pleading, notice or other paper requiring service shall be served upon the parties to the action or upon their attorneys . . . ."

Md. Rule 306 c. states in part:

"When service of a pleading, notice or other paper requiring service is to be made upon a party represented by an attorney, the service shall be made upon such attorney unless actual service is ordered by the court. . . ."

The appellants submit that a subpoena *duces tecum* is not within the meaning of the phrase "pleading, notice or other papers requiring service." They do not, however, offer any Maryland authority on this point. The appellees extend *Tvardek v. Tvardek,* 257 Md. 88, 261 A.2d 762 (1970), to support their proposition that "where service of process is effected upon counsel in a case still in active litigation, due process is satisfied."

In *Tvardek* the Court of Appeals held that procedural due process was satisfied when a party's attorney of record was served with a petition and order to show cause in a child support case. The Court considered the decision in *McSherry v. McSherry,* 113 Md. 395, 77 A. 653 (1910) to be dispositive of this issue. As in *Tvardek,* the *McSherry* case involved the continuation of domestic relations litigation in which personal service upon the defendant was not required. The defendant in *Tvardek,* however, did receive actual knowl-

edge of the modification proceeding, but the Court of Appeals did not indicate that actual knowledge was essential for due process.

Although *Tvardek* and *McSherry* were domestic relations cases they are similar to the present case in which the Circuit Court for Prince George's County acquired jurisdiction over Laurins and Norman, and served the subpoenas on their counsel. As the Court of Appeals stated in *McSherry, supra* at 401:

"[T]he defendant could not deprive the Court of its jurisdiction by leaving the State."

The *McSherry* decision relied on the authority of *McKim v. Odom,* 3 Bland 407, 429 (1828), in which Chancellor Bland said:

"The Court has substituted service, in several cases, where the defendant may have notice of the proceedings, and where, in case he goes out of the way, there is a person who he has named in Court as his agent, and who the Court can look upon as such. * * * As in case of an injunction to stay proceedings at law, the attorney-at-law is such an agent, who the Court can regard as one charged with the whole defense of the matter in equity; and so too, where a defendant, who lives abroad, refuses to answer, after having appeared as required by the subpoena with which he has been served, the Court will order service of his solicitor to be deemed good service of a subpoena to answer an amended bill."

The *McKim* decision has been applied to the general proposition that service of the subpoena *duces tecum* for a non-resident may be made upon the party's solicitor. Miller, *Equity Procedure* § 115. See also *Higgens v. California Prune and Apricot Growers,* 282 Fed. 550, 554 (2d Cir. 1922), in which Circuit Judge Rogers stated:

"It is fundamental that no judicial proceedings can be had against any person until he has been

notified thereof by lawful service of process; and in an action in personam he must be served with process within the territorial jurisdiction of the court from which the process issued. But there are certain classes of cases in which the courts, independently and without express statutory authority, have for more than a century assumed the right to allow service to be made within their jurisdiction upon some person for the absent defendant and have regarded such substituted service as valid."

This Court must consider the general concepts of equity procedure in light of the specific statements of Md. Rule 306. Because a subpoena *duces tecum* does require service under Md. Rules 114 and 115, service upon a party's attorney complies with Md. Rule 306.

## (B) DIRECT CRIMINAL CONTEMPT

Responding to the motion made by counsel for Prince George's County, the court, in its memorandum of November 30, 1979, found Laurins and Norman in direct criminal contempt pursuant to Md. Rule P3. For their failure to appear on July 31, 1979, Laurins and Norman were each fined the sum of $2,000.00.

Md. Rule P3 provides:

"a. *Summary Punishment.*

A direct contempt may be punished summarily by the court against which the contempt was committed.

b. *Order of Contempt.*

Where a direct contempt is committed, the court shall sign a written order to that effect. The order shall recite the facts, be signed by the judge and entered of record. The order shall state which of the facts were known to the court of its own knowledge and as to any facts not so known, the basis for the court's finding with respect thereto.

c. *Record.*

The record in such cases shall consist of

(1) such order of contempt,

(2) any affidavit filed by the defendant,

(3) any affidavit filed by the State's attorney in support of the order of contempt, if the court directed him to investigate or prosecute the contempt, and

(4) any testimony offered."

The appellants contend that they did not commit such direct contempt in the presence of the court that would warrant summary punishment pursuant to Md. Rule P3.

We agree with this contention, and find that the Circuit Court erred in its application of Md. Rule P3.

Maryland law classifies contempts as civil or criminal, and either of these may be direct or constructive. The various categories are not mutually exclusive, thus permitting such permutations as a direct criminal contempt or a constructive civil contempt. *State v. Roll,* 267 Md. 714, 727, 298 A.2d 867 (1973). In *Roll* the Court of Appeals discussed the distinction between criminal and civil contempts, finding that criminal contempts are positive actions which offend the dignity of the court. By holding a party in direct criminal contempt the court vindicates its authority and punishes the offender. On the other hand, the power of the court to hold a party in civil contempt for his failure to obey a court order is used to benefit another party in the proceedings.

Maryland preserves the distinction between criminal and civil contempt, using the criminal contempt process as punishment for past misconduct, and using the civil contempt process to coerce future compliance. *Roll, supra* at 728.

From the evidence in the present case we find that the contempt judgment against Laurins and Norman was designed as punishment for their non-appearance in court, rather than as a means of coercing their appearance at a

future trial. Therefore, the appellants were convicted of criminal contempt.

In this State a civil contempt may be proven by a preponderance of the evidence,whereas a criminal contempt must be shown beyond a reasonable doubt. *Winter v. Crowley,* 245 Md. 313, 226 A.2d 304 (1967). Although a contemnor in a criminal contempt proceeding in Maryland is not entitled to indictment by a grand jury and *may* not have a right to a jury trial,[2] additional safeguards are available to him. The burden of proof is increased, the accused cannot be compelled to testify against himself, he cannot be placed in double jeopardy, and except when a contempt may be dealt with summarily, the panoply of fundamental due process rights are available. *Roll, supra* at 731.

The chancellor treated the absences of Laurins and Norman as direct contempts and acted summarily under Md. Rule P3. Md. Rule P1 (a) defines direct contempt as one committed in the presence of the court, or so near to the court as to interrupt its proceedings. This definition and the procedures of Md. Rule P3 were analyzed by the Court of Appeals in *Roll, supra* at 734:

> "We think the content and meaning of the phrase 'in the presence of the court' as used in Rule P1 a and the procedure sanctioned by Rule P3 for conducting a direct contempt proceeding must be framed against a constitutional background. When this is done, the picture is clear. A direct contempt occurs when the actions of the contemnor interrupt the order of the courtroom and interfere with the conduct of business. When such disruption occurs within the sensory perception of a presiding judge he will have a sufficient knowledge of the contemptuous act which tends to interrupt the proceedings and will not have to rely on other evidence to establish all the details, though some of them can be supplied by additional testimony.

---

**2.** Sheets v. City of Hagerstown, 204 Md. 113, 118, 102 A.2d 734 (1954). The right to a jury trial is guaranteed if the offense may be punished by imprisonment of six months or more. Bloom v. Illinois, 391 U.S. 194 (1968).

> When, as in the case here, the judge does not have personal knowledge of the facts and must learn of them totally from others, direct contempt proceedings are not authorized. The reason such proceedings are not permitted is that there is no need for summarily disposing of an alleged contempt when the behavior of the accused is not personally known to the judge or does not occur so near to the court as to interrupt proceedings then being conducted by the judge. Here, summary proceedings were not immediately necessary to vindicate the court's dignity and the appellees' actions did not imperil any proceedings being conducted in open court."

As in *Roll,* so in the present case we find nothing in the record to indicate that the Circuit Court was interrupted by the appellants' absence. To the contrary, the trial proceeded without them after the appellee's counsel stated a desire to go forward with the trial. Additionally, the record does not show that the chancellor had personal knowledge of the facts which might have explained or even excused the appellants' absence.

The Court of Appeals in *Roll* found authority in the decisions of the U.S. Supreme Court for the reversal of unwarranted contempt proceedings. In *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S. Ct. 499 (1971), Justice Douglas concluded that a defendant in criminal contempt proceedings should be given a public trial before a judge other than the one insulted by the contemnor. Of course, in the present case there are no signs that the chancellor was "vilified" by the appellants' absence. Nevertheless, we must apply the due process procedures described by the U. S. Supreme Court to the present case, because the chancellor imposed criminal sanctions on the appellants.

Criminal contempt procedures certainly may be initiated because of a party's absence from court. Those procedures, however, must reveal sufficient evidence showing the party's requisite willful disobedience or deliberate disruption. The Court of Appeals has affirmed orders of

direct contempt coming from unjustified failure to appear in court where the trial court satisfied all of the requirements of Md. Rule P3. In *Kandel v. State,* 252 Md. 668, 250 A.2d 853 (1969), the Court found in the record sufficient facts stated in the judge's signed order to enable the Court to decide whether a contempt was committed and whether the trial judge had jurisdiction to punish it. Similarly, the Court of Appeals has affirmed contempt judgments against a corporation for the failure to obey a subpoena *duces tecum* where there could be no justification for the disobedience. *Ex Parte General News Bureau,* 162 Md. 643, 161 A. 259 (1932). Should a court determine on the record that a party deliberately neglected a scheduled court appearance without a legitimate excuse, then by the evidence of that deliberate neglect the party may be subject to an adjudication of criminal contempt. *Commonwealth v. Marcone,* 410 A.2d 759 (Pa. 1980). Every failure to appear would not constitute a contempt, rather a finding of contempt could only be sustained after the establishment of an intentional disobedience or neglect. *Marcone, supra* at 765.[3]

The contempt judgments against Laurins and Norman cannot stand because of the lack of proper procedure by the Circuit Court in its failure to provide the requisite evidence of the appellants' criminal conduct. Such evidence is essential if this Court is to make an informed appellate review of the facts upon which the summary contempt conviction rests. *United States v. Mars,* 551 F.2d 711 (6th Cir. 1977); *Weaver v. State,* 244 Md. 640, 224 A.2d 684 (1966). If a "cold record" lacks the required development of evidence this Court need not presume the fairness of the chancellor at trial. Rather we may find from the record that the chancellor abused her contempt powers. *Muskus v. State,* 14 Md. App. 348, 359, 286 A.2d 783 (1972).

Proof of a direct criminal contempt must be shown beyond a reasonable doubt if a judgment is to be sustained by this

---

**3.** The trial judge must have sufficient personal knowledge of the facts surrounding defendant's nonappearance to find that defendant's behavior was contemptuous. Murphy v. State, 46 Md. App. 138, 150, 416 A.2d 748, 755 (1980).

Court. *Goldsborough v. State,* 12 Md. App. 346, 358, 278 A.2d 623 (1971). Where a chancellor has stated conclusions but has not specified the facts which allegedly gave rise to contempt within the presence of the court, the reasonable doubt standard has not been met. *Robinson v. State,* 19 Md. App. 20, 27, 308 A.2d 712 (1973). Because an *unexplained* absence is not a contempt committed in the actual presence of the court, the chancellor's order does not meet the standard required to affirm the direct criminal contempt judgments. *United States v. Delahanty,* 488 F.2d 396, 400 (6th Cir. 1973). In *Delahanty,* Circuit Judge Celebrezze stated:

> "We find that this matter should not have been dealt with summarily. While the absence of Appellants was obvious to the Court, the reasons for their absence were not. The Court did provide an opportunity for an explanation of their absence, but only after the Court had found Appellants to be in contempt." *Id.* at 398.

Although we have held that the service of the subpoenas *duces tecum* upon the appellants' attorneys constituted proper service for enforcement of the subpoenas, contempt proceedings would not be the proper method of enforcement absent actual notice to the appellants. *In Re Abt,* 2 B.R. 323 (Bkrtcy. E.D. Pa. 1980); *Fidelity Mortgage v. Camilia,* 550 F.2d 47 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093.

The proper procedure for the Circuit Court's enforcement of the subpoenas would have involved attachment and fine as described in Md. Rule 114 and interpreted by the Court of Appeals in *Evans v. Howard,* 256 Md. 155, 259 A.2d 528 (1969). Bench warrants could have been issued for the absent parties. *See Hainesworth v. State,* 9 Md. App. 31, 262 A.2d 328 (1970), *cert. denied,* 258 Md. 727.

This procedure was recently recommended by the Court of Appeals of Georgia. In *Martin v. Waters,* 259 S.E.2d 153 (1979), the Georgia court reversed a contempt judgment issued summarily in the appellant's absence without notice or hearing. The court held that due process required that the

accused be given an opportunity to be heard. The proper course for creating this opportunity would have been to have the appellant arrested and brought into court, and then to be dealt with in the manner provided by law.

After the appellants had been provided with all of their due process safeguards, then the Circuit Court could properly conduct a contempt hearing. *See Reamer v. Reamer,* 246 Md. 532, 229 A.2d 74 (1967), in which the Court of Appeals held that a contempt hearing could not be conducted until the defendant was served with a show cause order. *Reamer* involved the application of Md. Rule P4 for constructive contempt, not committed in the presence of the court. Constructive criminal contempt best describes the absence of Laurins and Norman, especially when no evidence indicates that the appellants' absence directly interrupted the proceedings of the court.

This Court has previously applied Md. Rule P4, and its provisions for due process, to situations involving a defendant's absence from court. In *Pearson v. State,* 28 Md. App. 464, 347 A.2d 239 (1975), Chief Judge Orth stated:

> "The question is, what kind of contempt would such action constitute. Viewed in the light of the Court of Appeals' construction of the language of Rule P3, §§ a and b, the offensive act of Pearson, assuming it was voluntary, was not a direct contempt. His failure to return to the courtroom after the luncheon recess did not, in fact, interrupt the order of the courtroom and interfere with the conduct of business. The trial promptly proceeded to verdict, without him as authorized by Rule 775, and without prejudice to the State, claimed or existent. The behavior of Pearson, therefore, constituted a constructive contempt. The court below, however, proceeded as if Pearson had committed a direct contempt by summarily punishing him. It had no authority to do so, and should have proceeded under Rule P4, applicable to constructive contempt." *Id.* at 483 (Footnotes omitted.)

Thus, the contempt judgments against Laurins and Norman must be reversed and remanded for further proceedings.

## III. — AWARD OF ATTORNEY'S FEES

After the Circuit Court ruled that it was unreasonable for Laurins and Norman to be required to travel to Maryland to be deposed, Prince Geoege's County, on June 6, 1979, issued interrogatories to all the defendants. These interrogatories were served by mail. LAV Shell Co., Inc. filed answers on July 11, 1979, but at a hearing held on July 19, 1979 these answers were ruled not responsive. On July 13, 1979, the appellee moved to compel discovery of the defendant Norman. At the hearing on July 19, 1979, the chancellor isued an order requiring answers by July 25, 1979. No previous signed order required Laurins and Norman to provide answers. On July 20, 1979, the appellee filed a motion for attorney's fees pursuant to Md. Rule 417 c 3, and filed exceptions to the answers provided by LAV Shell Co. Counsel for the appellants filed "Further Answers to Interrogatories" on July 25, 1979, pursuant to the July 19, 1979 order.

At the trial on July 31, 1979, counsel for Prince George's County again requested sanctions via costs against the defendants for the alleged failure to comply with discovery.

In her order of November 30, 1979, the chancellor stated:

"A review of the file clearly indicates a failure to comply with discovery and pursuant to Rule 422 b 5, the defendants will be assessed reasonable attorney's fees caused by the failure to so comply and a hearing shall be had on the amount thereof."

Md. Rule 422 provides in part:

"b. *Failure to Comply With Orders for Discovery.*

If any party or an officer or managing agent of a party or a person designated under section a2 (b) of Rule 405 (Designation of Person to Testify) fails to

obey an order requiring him to provide or permit recovery, the court may make such orders in regard to the failure as are just, and among others the following:

\* \* \* \*

5. Payment of Expenses.

In lieu of any of the foregoing orders or in addition thereto, if the court, after opportunity for hearing, finds that the failure to obey the order was without substantial justification, it shall require the party failing to obey such order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless it finds that other circumstances make an award of expenses unjust."

At a hearing on December 27, 1979 the chancellor ordered the appellants to pay $1,500.00 in attorney's fees on the basis of 151 hours of work. The chancellor told the parties:

"[M]y assessment of attorney's fees are going to be — and I want to make it clear for the record not only included their failure to comply with discovery, but because of their failure to comply with their discovery at the trial of the issues of this case, the county had to go forward even without the information that they had sought in the discovery. I believe it was certain tax returns never have been provided. The county had to go forward because the court was not going to continue the case any longer.

With a review of the jacket, the reluctance of the defendants to comply with the rules during the discovery proceedings, the amount of time that was obvious that the county had to expend, for example, getting all of those photostatic copies of the deeds, conveyances at the time of trial may not have been necessary if the discovery had been complied with in this case."

By our review of the evidence we find that the chancellor abused her discretion in assessing the $1,500.00 in fees. The affidavits submitted by the appellee do not specifically indicate which costs and attorney's fees were actually caused by the appellants' failure to provide certain tax returns pursuant to the order of July 19, 1979. Rather, the appellee's counsel stated that the reimbursement was being sought for time spent on the "action in toto," and for matters that had "nothing to do with discovery." Furthermore, the chancellor's remarks at the December hearing do not clarify whether or not the $1,500.00 assessment was made solely to reimburse the appellee for discovery expenses incurred after issuance of the July 19, 1979 order to comply with discovery. We must, therefore, remand the case for further proceedings in which complete evidence may be presented by the appellee showing its expenses that may be subject to reimbursement under Md. Rule 422 b 5.

*Judgment affirmed as to the fraudulent conveyance; judgments vacated as to the contempt of Laurins and Norman, and case remanded for further proceedings; judgment vacated as to the assessment of attorney's fees, and case remanded for further proceedings.*

*Costs to be divided one-half to the appellants and one-half to the appellee.*