ARTHUR F. GNAU *v.* GEORGE J. SEIDEL ET AL.

[No. 535, September Term, 1974.]

*Decided February 24, 1975.*

The cause was argued before MORTON, GILBERT and LOWE, JJ.

*William J. Blondell, Jr.* for appellant.

*Maurice W. Baldwin, Jr., Assistant County Solicitor,* with whom were *R. Bruce Alderman, County Solicitor, Harry S. Shapiro, Chief Assistant County Solicitor,* and *Charlotte Pine* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

This zoning case appeal from the Circuit Court for Baltimore County (MacDaniel, J.) began when a complaint was filed on March 22, 1971 by George J. Seidel, et ux. and Rev. Claude M. Kinlein against Arthur F. Gnau for "storing antique vehicles" on the Gnau property at 6801 Loch Raven Boulevard in violation of the county zoning regulations. The record is not clear as to how it came about, but by the time a hearing was held before the Zoning Commissioner of Baltimore County the alleged violations mushroomed to "selling antiques without benefit of an antique shop, contractor's storage yard, truck terminal and miscellaneous junk." The Zoning Commissioner determined that Mr. Gnau was "guilty of violating [the] regulations" and ordered that "such use of the . . . property . . . cease" within a prescribed time. Gnau appealed to the County Board of Appeals.

The Board did not hear the matter until May 16, 1973.[1] At that time Gnau appeared and requested a postponement on

---

1. We were advised on oral argument that the case had been postponed on several occasions; 4 times by the protestants, twice by the Board and thrice by Gnau.

the ground that he was without counsel. It appears that his attorneys had withdrawn from the case in January, 1973. Gnau advised the Board that he had consulted another attorney who "has all the papers and everything else." Counsel for the County and the attorney for the protestants requested that the hearing proceed. The Board observed that Gnau "had plenty of notice to get help", and it decided to hold the hearing as scheduled.

The testimony produced on behalf of the County and the protestants quickly reduced the number of alleged violations to the sole question of whether Gnau was operating a truck terminal within a B. L. (Business, Local) zone.[2] The Board, in its opinion of February 1, 1974, held that Gnau was operating a truck terminal within the B. L. zone and ordered that such operation cease within 45 days from the date of the Order of the Board. Gnau then appealed to the Circuit Court. Judge MacDaniel affirmed the ruling of the Board, and Gnau has appealed to this Court where he poses four questions, namely:

1. Did the hearing judge err in refusing to reverse the Board on the ground that Gnau was denied his constitutional right to counsel before the Board?

2. Did the Circuit Court err in denying Gnau's motion for default judgment?

3. Was the evidence before the Board sufficient to sustain a finding that Gnau was operating a "truck terminal?"

4. Were the "protestants . . . proper parties of the hearing . . . before the Board?"

I.

The main thrust of the appellant's argument in this Court is concerned with what he perceives to be a denial to him of due process of law. This denial, in

---

2. The County Zoning Regulations, § 230.13 authorized the Board to grant a "special exception" so as to permit the operation of a "Garage, service" within a B. L. zone.

appellant's view, was occasioned by the Board's refusal to postpone the hearing of May 16, 1973, because appellant was without counsel. Gnau cites a number of cases that have been decided by the Supreme Court, the Court of Appeals of Maryland and this Court, all to the total effect that "due process" requires a fair opportunity to obtain counsel, and an opportunity to be heard. No one can seriously quarrel with the Supreme Court's holding in *Morgan v. United States*, 304 U. S. 1, 58 S. Ct. 773, 82 L. Ed. 1129 (1938), when it stated:

> "The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing' — essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an inexorable safeguard." (Citations omitted).

If for the purposes of this case we define "due process", which has been characterized as a "phrase of convenient vagueness" [3] to mean adequate notice, the opportunity to be heard, the opportunity to be confronted by accusers, the right to a fair and impartial public hearing, the opportunity to employ counsel of one's own choosing, the opportunity to call witnesses in one's own behalf, the right to testify personally or refrain from so testifying, and the right to seek redress in the courts, we have no hesitancy in holding

---

3. Hough, *Due Process of Law-Today*, 32 Harv. L. Rev. 218 (1919).

that the appellant has not, on the basis of the record before us, been denied his constitutional right to due process.

The record simply does not support appellant's bald allegation, in his brief, "that he was only notified [of his prior counsel's withdrawal] a few days prior to the hearing." Furthermore, the members of the Board were not even assured that if they had granted a postponement, appellant could obtain counsel. A letter bearing the date of May 16, 1973 and delivered to the Board on the afternoon of the hearing underscores that uncertainty. The letter signed by a member of the bar states:

"Please be advised that it is our intention to confer at length with Mr. Gnau about representation of him in the above matter. This conference will take place in the very near future and once terms of employment are agreed upon we will then enter our appearance. We have not had the opportunity to confer previously in view of the fact that I have been ill. However, we will confer promptly and *if and when terms of employment are agreed upon will enter our appearance*." (Emphasis supplied).

Possible future employment of counsel was obviously too slender a reed to justify, in the Board's view, the postponement of the case.

In *Bernstein v. Bd. of Education*, 245 Md. 464, 226 A. 2d 243 (1967) the Court of Appeals considered a case wherein the Board of Education gave notice of a hearing to be held six days thereafter. The notice was given to parents of children who would be affected by a proposed transfer from one elementary school to another. At the hearing some parents requested a continuance in order that they might obtain counsel. The Board denied the requested continuance. Judge Oppenheimer, writing for the Court, said at 474-75:

"The granting of a continuance is within the sound discretion of an administrative agency, as it is in the comparable discretion of a trial court. *State Roads Comm'n. v. Wyvill*, 244 Md. 163, 168, 223 A. 2d 146 (1966). There was sufficient time for

appellants to employ counsel to appear at the hearing, if they had wished to do so. We find no abuse of discretion."

The refusal by the Board to continue the instant case, in order to allow appellant further time to retain counsel, was a justifiable exercise of their discretion.

## II.

Gnau's petition of appeal to the Circuit Court was noted on March 6, 1974. Md. Rule B9 prescribes that an answer to an appeal from an administrative agency shall be filed by a "[p]arty to the proceeding before the agency" within 30 days "after the filing of the petition of appeal." The Board submitted to the Circuit Court what is designated as:

"ANSWER TO ORDER OF APPEAL TO CIRCUIT COURT FOR BALTIMORE COUNTY AND CERTIFIED COPIES OF PROCEEDING BEFORE THE ZONING COMMISSION AND BOARD OF APPEALS OF BALTIMORE COUNTY."

The attachments to the "Answer" consisted of certified copies or original papers from the office of the Zoning Department, zoning docket entries, the opinion of the Board and a transcript of the hearing of May 16, 1973.

Because Baltimore County, acting through its solicitor, did not file an "answer" to the petition, Gnau moved for a judgment by default against the County. The appellees, George J. Seidel and Claude M. Kinlein, had in the interim filed the answer required by the Rule. We do not have the benefit of knowing upon what basis the judge denied Gnau's motion, inasmuch as the docket entries disclose the bare fact that the motion was "Denied".

In this Court the County argues somewhat ingenuously we think, that the Board's transmittal of the record to the Circuit Court, operated as an "answer" within the meaning of Rule B9. We do not see it that way. The Board's mere forwarding of the record to the Court is not tantamount to an "answer" by the County Solicitor within the clear meaning of Rule B9.

Recognizing that its argument may be untenable, the County alternatively suggests that in any event the appellant has not been prejudiced by the non-compliance with Rule B9 by the County, citing *Pahl v. County Bd. of Appeals*, 237 Md. 294, 206 A. 2d 245 (1965). In *Pahl* the Court said:

> "Finally, the appellants claim that the trial court erred in permitting oral argument by counsel for the applicants where no answer to the petition for appeal or no petition to intervene had been filed on behalf of the applicants prior to the argument in the court below pursuant to Maryland Rule B9. While we do not condone the practice followed in the trial court and the overruling of the appellants' objection to hearing oral argument without compliance with this procedural rule, since the appellants concede that no prejudice resulted we see no need to further pursue the matter."

Gnau, however, is not as magnanimous as Pahl. He has not conceded the lack of prejudice to his cause by the hearing judge's denial of the motion for judgment by default. Gnau asserts, and we agree, that the County should have been required to comply with Rule B9. The Court of Appeals and this Court have on a number of occasions stated that the Maryland Rules of Procedure are not mere guides or helpful hints to the practice of law, but are precise rubrics that are to be read and followed. *Isen v. Phoenix Insurance Co.*, 259 Md. 564, 270 A. 2d 476 (1970); *Brown v. Fraley*, 222 Md. 480, 161 A. 2d 128 (1960); *Callahan v. Dean*, 17 Md. App. 67, 299 A. 2d 479 (1973); *Pearson v. State*, 15 Md. App. 462, 291 A. 2d 167 (1972); *Ritter v. Danbury*, 15 Md. App. 309, 290 A. 2d 173 (1972); *In re Arnold*, 12 Md. App. 384, 278 A. 2d 658 (1971). Nevertheless, Gnau's being right with respect to the County's participation in this case, avails him of little because Seidel and Kinlein, the appellees, did properly answer Gnau's petition of appeal and hence the matter was before the Circuit Court. In any event, we see no prejudice.

### III.

Section 101 of the Baltimore County Zoning Regulations defines a truck terminal as:

> ". . . Any building, or other structure, and/or land devoted primarily to the transfer of merchandise from one truck or truck trailer to another *or* devoted to the lay-over parking of trucks or trailers . . . ." (Emphasis supplied).

It is manifest that the above-quoted definition necessitates one of two events occurring before a particular business operation falls within the meaning of a truck terminal: (1) A use "devoted primarily to the transfer of merchandise from one truck to another" *or* (2) a use devoted to "lay-over parking of trucks or truck trailers." Gnau would have us read the above quoted definition so as to substitute *"and"* for *"or"*, thus making the two separate disjunctive clauses conjunctive. We refuse to do so. Courts are not free to rewrite statutes or ordinances. Their function is to interpret, and interpretation "does not include the power of amendment under the guise of interpretation." *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703, 108 A.L.R. 1330 (1937) (dissenting opinion). "Rules of statutory construction are to be resorted to when there is a doubt, ambiguity, or uncertainty, and they are never used to create doubt, but only to remove it." *Helvering v. Northwestern Nat. Bank & Trust Co.,* 89 F. 2d 553 (8th Cir. 1957). The ordinance in the case now before us is clear and unambiguous, and it requires no judicial interpretation. It is written in language that ordinary persons can readily understand, and the construction placed upon it by the appellant defies common sense. A complete answer to appellant's argument is found in a *Letter to William Johnson* by Thomas Jefferson, June 12, 1823 wherein the late President penned:

> "Laws are made for men of ordinary understanding and should therefore be construed by the ordinary rules of common sense. Their meaning is not to be

> sought for in metaphysical subtleties, which may make anything mean everything or nothing at pleasure."

The undisputed evidence in this case demonstrated that the appellant kept seven or eight of his trucks on the subject property overnight, each night. That testimony perspicuously established that Gnau was, in fact, operating a truck terminal as that term is defined in the County Zoning Regulations, § 101. Inasmuch as the conducting of truck terminal business in a B. L. zone is, in the absence of a special exception, proscribed by the Zoning Regulations, the Board was correct in finding that Gnau was in violation of the Zoning Regulations. It follows that the Circuit Court was correct in affirming the Board.

## IV.

Lastly, appellant contends that the appellees, Seidel and Kinlein, are not "aggrieved" parties and consequently, have no standing in this case. The theme of Gnau's argument is that neither Seidel nor Kinlein fall within the ambit of "aggrieved parties" as that term has been defined by the Court of Appeals and this Court.

The testimony shows that Seidel resides "700 feet south" of the appellant's property and that the trucks of Gnau are visible from the road. Kinlein resides with his mother at 6707 Loch Raven Boulevard. He testified that on his "day off or on Sunday" he "would see them [the trucks] in the back or sometimes just the top part of the trucks." He said he could see "from 4 to 6" trucks. The property in which Kinlein resides is immediately south of and contiguous to that of Seidel.

Judge Barnes, in *Bryniarski v. Montgomery Co.*, 247 Md. 137, 230 A. 2d 289 (1967), after noting that " 'aggrieved' has not been legislatively defined" went on to state at 144:

> "Generally speaking, the decisions indicate that a person aggrieved by the decision of a board of zoning appeals is one whose personal or property rights are adversely affected by the decision of the

board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specifically affected in a way different from that suffered by the public generally. *DuBay v. Crane,* 240 Md. 180, 185, 213 A. 2d 487 (1965). The circumstances under which this occurs have been determined by the courts on a case by case basis and the decision in each case rests upon the facts and circumstances of the particular case under review. Certain principles, however, have evolved. They are as follows:

\* \* \*

2. In cases involving appeals under the provisions of a zoning ordinance:

(a) It is sufficient if the facts constituting aggrievement appear in the petition for appeal either by express allegation or by necessary implication. *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966).

(b) An adjoining, confronting or nearby property owner is deemed *prima facie,* to be specially damaged and, therefore, a person aggrieved. The person challenging the fact of aggrievement has the burden of coming forward with evidence to establish that the petitioner is not in fact aggrieved . . ."

See also *Wier v. Witney Land Co.,* 257 Md. 600, 263 A. 2d 833 (1970).

When we apply the test of *Bryniarski* to the case now before us it is obvious that Seidel and Kinlein fall within the ambit of the "adjoining, confronting or nearby property owner" and thus are deemed to be *"prima facie . . .* specially damaged." We are unable to find within the record any evidence whatsoever of a challenge to "the fact of aggrievement". Consequently, appellant has not met his

burden of coming forward with evidence in order to overcome the *prima facie* presumption of aggrievement that surrounds the appellees.

At the hearing before the Board one of the board members styled the case as "quasi-criminal". Gnau seizes upon that expression, assumes its truth and then proceeds to assert that appellees' interest then would diminish to that of the general public since criminal cases are matters between the State and the accused. We regard appellant's argument as too specious to require discussion.

> *Judgment affirmed.*
> *Costs to be paid ⅔ by appellant*
> *and ⅓ by Baltimore County.*