# DONNIE DORSEY and ROSCOE DORSEY v. STATE OF MARYLAND

[No. 47, September Term, 1982.]

*Decided January 10, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Gary W. Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellants.

*Stephen Rosenbaum, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

In this case petitioners Donnie Dorsey and Roscoe Dorsey contend that a trial court afforded them more due process of law than they believe they were entitled to receive in a contempt matter and hence that the court was deprived of jurisdiction, making their convictions nullities. We shall reject their contentions, including claims that there was insufficient evidence to conclude that court proceedings were disrupted and that they were responsible for any part of the disturbance.

## I The case

Maryland Rule P4 concerns constructive contempt. It provides that such proceedings "may be instituted by the court of its own motion, by the State's attorney or by any person having actual knowledge of the alleged contempt." Provision is then made for notice to the defendant. That notice is to include the show cause order and any written statement filed in support of the alleged contempt. Provision is made for the appointment of a prosecutor ("the State's attorney or any other member of the bar") and that the judge who issues the citation shall be disqualified from presiding at the hearing "except where such contempt consists of failure to obey an order or judgment in a civil case" unless the "defendant otherwise consents . . . ." See *Harford Co. Educ. Ass'n v.*

*Board,* 281 Md. 574, 380 A.2d 1041 (1977), for an application of the rule.

The two Dorseys and others were being tried on escape charges in the Circuit Court for Anne Arundel County. While awaiting the call of their individual cases for trial they were placed in a confining cell immediately adjacent to the courtroom. About two weeks later Judge E. Mackall Childs, who presided in the escape cases, filed an order which recited that on February 20, 1980, while he was attempting to try escape cases in the Circuit Court for Anne Arundel County, these individuals were being held in a cell adjacent to the courtroom in which the cases were being tried; that "the noise emanating from the cell in which said individuals were being held was of such volume as to directly interfere with the orderly business of the court"; that "warnings were issued to the inmates of the cell on repeated occasions, but were disregarded by said inmates who became so unruly as to necessitate their removal to the Sheriff's department in the basement of the courthouse"; and that "the business of th[e] court was unnecessarily interrupted and delayed by the conduct of [these] persons." These persons were directed pursuant to the provisions of Rule P4 b (1) to show cause why they should not be held in contempt. The order of Judge Childs referred to the affidavit of an assistant State's attorney which was attached. That affidavit is consistent with the facts as we shall recite them gleaned from the testimony. The order designated the State's Attorney for Anne Arundel County to prosecute the contempt action.

When the matter was called for hearing before Judge Childs the State asked to amend the order, stating:

> "[T]hey were charged under Rule P4. However, all the evidence seems to indicate that what was involved was a direct interference and the State would ask the Court to change its Order to Rule P3, which is direct contempt."

The request for amendment was granted.

Rule P3 deals with direct contempt. It provides that such a contempt "may be punished summarily by the court against which the contempt was committed." Rule P3 b states:

"Where a direct contempt is committed, the court shall sign a written order to that effect. The order shall recite the facts, be signed by the judge and entered of record. The order shall state which of the facts were known to the court of its own knowledge and as to any facts not so known, the basis for the court's finding with respect thereto."

Rule P3 c goes on to provide:

"The record in such cases shall consist of

(1) such order of contempt,

(2) any affidavit filed by the defendant,

(3) any affidavit filed by the State's attorney in support of the order of contempt, if the court directed him to investigate or prosecute the contempt, and

(4) any testimony offered."

Defense counsel stated:

"With regard to the change in the contempt papers, Your Honor, I have only one objection, as we pointed out in our pleadings, with the Court in the motion to recuse and the motion for jury trial, is that once the situation has gone beyond a summary proceeding situation, that is, where the Court has to assert its authority at that moment to maintain the decorum of the Court, that less than summary proceedings, excuse me, more than summary proceedings are required. And those proceedings are spelled out in Rule P4, which require the Judge to recuse himself and which require the show cause order and such that was complied with here. And that we could not accept a change in the order which would forego those procedural rights which we are entitled to under that order. So that, I do not know

how you want to do it. We have no objection with proceeding with this matter. Call it constructive contempt. Call it direct contempt. But, as the evidence may be adduced to trial. But we wish to maintain those procedural rights which are obtained through Rule P4."

In due season the matter came on for trial before a jury with another judge presiding. The testimony disclosed that during the morning session an assistant State's attorney twice sent word to the guards that noise from the cell was being heard in the courtroom by the presiding judge. During the afternoon session noise was again heard. A request for the prisoners to quiet down was again sent. The noise level subsided momentarily. It resumed shortly thereafter. Judge Childs testified as to what took place:

"I couldn't hear the exact words that were being said. It was just extremely loud conversation. Ordinary conversation in the bullpen, doesn't disturb the procedures of the courtroom at all. But the acoustics are, are poor at best and with all the loud conversation that was taking place in the bullpen, it made it extremely difficult for me to hear what counsel and witnesses were saying."

The judge then asked a deputy sheriff to tell the guards to quiet the prisoners. The message was relayed to another deputy sheriff who then conveyed to the prisoners the request of the judge for them to be quiet. The request was not kindly received. The response was characterized by one individual as "a cheer" and by Judge Childs as a "loud outburst." Donnie Dorsey made an uncomplimentary remark relative to the judge, one not used in polite society. Roscoe Dorsey said the judge would not be telling him what to do. Judge Childs described the noise as having disrupted the court proceedings completely, stating that he was obliged to adjourn court. After the last outburst Judge Childs directed that the prisoners be taken to the lockup in another portion of the building.

The jury returned a guilty verdict. The trial judge sentenced each of the petitioners to a term of three months to run consecutively to any other sentence then being served. An appeal to the Court of Special Appeals followed. It affirmed in an unreported opinion. We granted the petition of the Dorseys for a writ of certiorari.

To us it is contended that the trial court lacked fundamental jurisdiction and that there was insufficient evidence of direct contempt. We shall first address the issue of sufficiency of the evidence because we would have no need to consider the other contention were there insufficient evidence.

## II Sufficiency of the Evidence

On this issue the Court of Special Appeals said:

> "Appellants argue that the evidence was insufficient to sustain their convictions of direct contempt because the State failed to establish that they intended to disrupt the proceedings; that they, rather than the other prisoners in the 'bull pen', caused the proceedings to be disrupted, and that they were not warned that if the noise continued, they would be held in contempt. We find no merit to appellants' arguments."

It said also:

> "We also think that the jury could have reasonably inferred from the evidence that appellants were responsible for, or contributed to, the noise that interrupted the order of the court and its proceedings. Moreover, even if appellants were not specifically admonished that they would be held in contempt if they did not discontinue the noise, such a warning is not a necessary prerequisite to a finding of direct contempt. *See Robinson v. State,* 19 Md. App. 20, 28 (1973)."

We adopt that opinion.

## III Jurisdiction

### a.

Petitioners assert that one must first determine whether a contempt is direct or constructive and then one proceeds under the P rules. Direct and constructive contempts are defined in Rule P1. A direct contempt is said in Rule P1 a to be one "committed in the presence of the court, or so near to the court as to interrupt its proceedings." Constructive contempt is defined in Rule P1 b as "a contempt which was not committed in the presence of the court, or so near to the court as to interrupt its proceedings." Since the acts allegedly committed by petitioners interrupted the proceedings of the court, an application of these two definitions without interpretation would lead to a finding that the contemptuous acts constituted direct contempt of court. Petitioners' arguments are contingent upon an application by the Court of an ironclad rule that only summary action under Rule P3 is permissible in cases of direct contempt and that the more elaborate procedures which provide more protection for rights of defendants used in constructive contempt may not be utilized.

The petitioners rely upon our holding in *State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867 (1973). It is the definitive Maryland case for the classification of contempt as to whether it is civil or criminal and whether it is direct or constructive. In that case Judge Digges said for the Court:

> "We think the content and meaning of the phrase 'in the presence of the court' as used in Rule P1 a and the procedure sanctioned by Rule P3 for conducting a direct contempt proceeding must be framed against a constitutional background. When this is done, the picture is clear. A direct contempt occurs when the actions of the contemnor interrupt the order of the courtroom and interfere with the

conduct of business. When such disruption occurs within the sensory perception of a presiding judge he will have a sufficient knowledge of the contemptuous act which tends to interrupt the proceedings and will not have to rely on other evidence to establish all the details, though some of them can be supplied by additional testimony.

"When, as in the case here, the judge does not have personal knowledge of the facts and must learn of them totally from others, direct contempt proceedings are not authorized. The reason such proceedings are not permitted is that there is no need for summarily disposing of an alleged contempt when the behavior of the accused is not personally known to the judge or does not occur so near to the court as to interrupt proceedings then being conducted by the judge." 267 Md. at 734.

An analogous case was before the Supreme Court of Mississippi in *Ex Parte L.T. Wisdom,* 223 Miss. 865, 79 So.2d 523 (1955). In that instance after a trial judge had announced his decision and retired to his chambers a litigant, in the words of the court, "used highly disrespectful and contemptuous language concerning the court in the courtroom and in the presence of the officers of the court." He was immediately brought before the court where the testimony was taken of a deputy sheriff. The accused said the sheriff had misunderstood him. No other witnesses were called to testify. The judge found that the accused "had used vulgar, profane and indecent language toward the court in the presence of officers of the court while in the courtroom, and that [he] had deliberately lied when he denied from the witness stand that he had made the statement alleged to have been made by him." In reversing the contempt conviction the Supreme Court of Mississippi said:

"[W]here witnesses are necessary to prove the acts of contempt, although the contempt may have been committed technically 'in the presence of the court,'

but not within the sight or hearing of the presiding judge, we think that notice should be given to the accused, and a reasonable opportunity afforded to him to prepare his defense. This does not mean that in every case.formal charges must be preferred or that the court cannot take prompt action for the punishment of the offender. But it does mean that the respondent should be given reasonable notice of the charges, by attachment, citation, or otherwise, so that he may know the nature and the cause of the accusation against him, and that he may have a reasonable opportunity to be heard. Grace v. State, 108 Miss. 767, 67 So. 212; Ex Parte Redmond, 159 Miss. 449, 132 So. 328. He should have the right and the opportunity to obtain the advice and assistance of counsel, if he desires to do so, the right to call witnesses, and the right to make a record on which an order may be reviewed on appeal." 223 Miss. at 870.

*Accord Ex Parte Terry,* 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). In *Terry* the Court found "instructive" an illustration of direct contempt in an opinion of the Supreme Court of Connecticut, *Middlebrook v. State,* 43 Conn. 257, 269 (1876), where it was said:

"The judicial eye witnessed the act, the judicial mind comprehended all the circumstances of aggravation, provocation, or mitigation; and the fact being thus judicially established, it only remained for the judicial arm to inflict proper punishment."

*Cf. Johnson v. Mississippi,* 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971). R. Goldfarb, *The Contempt Power* 74-75 (1963), states:

"It is further suggested that if summary procedures are continually applied to direct contempt cases, these situations should be limited strictly to acts which are direct in a physical, geographical sense,

> so that courts can act upon information which comes to them through their own sensual perception. Summary treatment should be withheld, at least in cases where commission of the contempt is only inferrible, no matter how directly related it is to the court. This is a significant distinction, sometimes overlooked by courts in their decisions. Since the applicability of summary procedures and the dispensation of certain constitutional rights follow the classification of contempt as direct, there is a serious importance in paying strict service to this distinction."

Judge Childs was right the first time when the citations were initially prepared. Although the contempt here was in the presence of the court from the standpoint of its being within the hearing of the court and its having actually interrupted the court's proceedings, it was indirect in the sense that the trial judge was not able to immediately identify the culprits. Testimony on the subject was necessary. The petitioners here cannot be heard to complain, however, since they have been provided their full panoply of rights, the rights to which they would have been entitled for an indirect contempt, including a trial by a jury.

b.

The petitioners argue that under *Roll and Scholl,* 267 Md. 714, a court is without power to punish for constructive contempt if it proceeds under Rule P3 for direct contempt and that the reverse is true, that a court is without power in a direct contempt situation to proceed under Rule P4. They misunderstand jurisdiction.

In *Stewart v. State,* 287 Md. 524, 526, 413 A.2d 1337 (1980), Judge Digges pointed out for the Court, quoting 1 J. Pomeroy, *Equity Jurisprudence* §§ 129-31 (5th ed. 1941), and citing *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334, 322 A.2d 539 (1974), that, juridically, jurisdiction refers to two quite distinct concepts: (i) The *power* of a court to

render a valid final judgment, and (ii) the *propriety* of granting the relief sought. He then went on to say, citing *First Federated* and other cases, that it is only when a court lacks fundamental jurisdiction to render the judgment it did that there is an absence of authority in the court so as to render its judgment a nullity. See also our recent discussion of jurisdiction in *Brodak v. Brodak,* 294 Md. 10, 14-17, 447 A.2d 847 (1982), and *Cant v. Bartlett,* 292 Md. 611, 619, 440 A.2d 388 (1982).

1 J. Poe, *Pleading and Practice* § 14 (5th ed. Tiffany 1925), states of our circuit courts:

> "[T]hese are the highest common law courts of record and *original* jurisdiction within the State, and each of them has full common-law powers and jurisdiction in all civil and criminal cases within its county, (except where, by law, the jurisdiction has been or may be taken away or conferred upon another tribunal,) and shall also have and exercise in the respective counties all the additional powers and jurisdiction which may hereafter be prescribed by law." *Id.* at 8 (emphasis in original).

Then in § 16 Poe states that these courts "can rightfully exercise all the powers exercised by the Court of King's Bench in England, so far as these powers are derived from the rules and principles of the common law, and are suited to the change of our political institutions, and not modified by our constitutional or statutory enactments."

Justice Field opened the opinion for the Court in *Ex Parte Robinson,* 86 U.S. (19 Wall.) 505, 22 L.Ed. 205 (1873), by stating:

> "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with

jurisdiction over any subject, they became possessed of this power." 86 U.S. at 510.

We said in *Cant*, 292 Md. at 619, "The fact that in this instance the trial judge erred in his conception of what was authorized does not make the order beyond the jurisdiction of the court." We took occasion there to quote from *Brown v. Baer*, 291 Md. 377, 435 A.2d 96 (1981), where Judge Eldridge said for the Court relative to an administrative law matter:

> "[W]e have held that merely because a trial court's order violates a statute or a rule does not render the order beyond the court's jurisdiction and a nullity; instead, it is only subject to reversal on a direct appeal." 291 Md. at 387 (citing cases.)

The court here had jurisdiction. Not only did the trial court have jurisdiction, but no violation of the rules occurred when, though cited for direct contempt under Rule P3, the trial court proceeded against the Dorseys under Rule P4. Direct contempt, so the rule says, "may be punished summarily . . . ." The rule does not say that direct contempt must be punished summarily.

# IV

In summary, the contempt here was such that the proper way to proceed was for constructive contempt, proof not within the knowledge of the trial judge having been required; the fact that the Dorseys were charged as for direct contempt but tried under constructive contempt procedures did not deprive the trial court of jurisdiction, it being a court of general trial jurisdiction; and there was sufficient evidence adduced.

*Judgment affirmed; appellants to pay the costs.*