484 A.2d 1050

**Angelita JONES**

v.

**STATE of Maryland.**

**No. 385, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Dec. 12, 1984.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty., and Thomas J. McNicholas, Asst. State's Atty. for Baltimore City, Baltimore), for appellee.

Argued before GILBERT, C.J., and WEANT and ALPERT, JJ.

GILBERT, Chief Judge.

"[W]hile unconstitutional exercise of power by the executive and legislative branches of government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self-restraint."

—Justice Harlan F. Stone [1]

■ This appeal has been taken from a judgment of contempt of the Circuit Court for Baltimore City. From the record we learn that Angelita Jones has already served the eighty-nine day sentence summarily imposed upon her, so the appeal is meaningless with regard to abating that punishment. Yet, the matter is not moot, because Ms. Jones is entitled to seek exoneration through having the contempt finding set aside.

At the outset we set the stage upon which this drama was acted. Ms. Jones was apparently served with a written summons to appear as defendant on October 4, 1983, in a criminal trial in the circuit court. When the date and time of her trial arrived, she did not. A bench warrant for her apprehension was issued. Later the same day, Ms. Jones appeared in the courtroom. When apprised that Ms. Jones was present, the judge called upon her to "answer to the Court ... for the failure to appear.... Let's deal with the

---

1. *United States v. Butler,* 297 U.S. 1, 78–79, 56 S.Ct. 312, 325, 80 L.Ed. 477, 495 (1936) (Stone, J., dissenting).

FTA." Ms. Jones was then advised by the judge that, "you're at the stage of the proceedings where you have to show cause for the reason you did not appear as scheduled this morning." Ms. Jones told the judge that she had gone to the wrong court house and, consequently, the wrong court; and that only after that court finished its assignment for the day did she realize that she was in the wrong place. A subsequent inquiry on her part led to her belated arrival in the proper forum. To say that the judge was not persuaded by Ms. Jones's explanation is to understate the fact. He questioned her and then pronounced:

> "All right. Pursuant to Court of Special Appeals decision *Murphy v. State* [46 Md.App. 138, 416 A.2d 748, *cert. denied,* 288 Md. 740 (1980)], I find the Defendant [Ms. Jones] guilty of contempt for failure to appear. She's had notice. In addition, her failure to appear obstructed the proceedings in this case. We had to discharge the witnesses in this case."

The eighty-nine day jail term followed.

Although Ms. Jones was advised she could appeal, no bail pending appellate disposition was set.[2] The record discloses the following dialogue between counsel and the court:

> "MR. FEINBERG [Defense Counsel]: We request that an appeal bond be set on that.
>
> THE COURT: You can go to the Court of Special Appeals.
>
> MR. FEINBERG: Are you holding her without an—For the record, is she being held without an appeal bond, Your Honor?
>
> THE COURT: Is there anything else, Mr. McNicholas?

---

**2.** *See* Maryland Rule P5. Bail., which states:
> "Where a defendant has been committed for a contempt he shall have the same rights with respect to admission to bail pending appeal as an accused in a criminal proceeding."

> MR. McNICHOLAS [Assistant State's Attorney]: No, Your Honor. That concludes today's docket." [3]

Ms. Jones did not avail herself of the right to seek bail through *habeas corpus*, Md.Cts. & Jud.Proc. Code Ann. §§ 3–701 through 3–707, and the eighty-nine day sentence has already been served.

To be punished summarily for contempt, as in the instant case, the contemptuous act must be direct criminal contempt. *Roll v. State*, 15 Md.App. 31, 288 A.2d 605 (1972), *rev'd in part and aff'd in part*, 267 Md. 714, 298 A.2d 867 (1973). Underpinning the court's awesome power to punish for contempt is the prevention of undue interference with the administration of justice.

With those thoughts firmly in mind, we now address the question of whether the actions of Ms. Jones constituted direct criminal contempt.

Direct contempt, according to Md. Rule P1 a, "means a contempt committed in the presence of the court, or so near to the court as to interrupt its proceedings." *See also Roll v. State*, 15 Md.App. 31, 288 A.2d 605 (1972), *rev'd in part and aff'd in part*, 267 Md. 714, 298 A.2d 867 (1973).

4 W. Blackstone, *Commentaries* *283 refers to direct contempt as that conduct "which openly insult[s] or resist[s] the powers of the courts or the persons of the judges who preside there ...." One hundred and five years ago the Supreme Court of Indiana paraphrased Blackstone's definition of direct contempt thusly: "A direct contempt is an open insult, in the face of the court, to the person of the judges while presiding, or a resistance to its powers in their presence." *Ex Parte Wright*, 65 Ind. 504, 508 (1879).

In *Dorsey v. State*, 295 Md. 217, 224–26, 454 A.2d 353, 357–58 (1983), the Court of Appeals said that, "in the

---

**3.** The trial judge's conduct was hardly a model of judicial decorum. Civility costs nothing but is invaluable.

presence of the court" means that the incident or event occurred within the geographical presence of the presiding judge. The contemptuous conduct, the *Dorsey* Court stated, must take place in the presence of the court and not be merely a contemptuous effect or result of that conduct. *Id.*

■ As we read the record in the matter *sub judice*, we are unable to conclude that Ms. Jones's non-appearance in the circuit court when her case was called was either an open insult to the court, the judge or a resistance to the powers of the judge. Viewed in the light most favorable to the State, Ms. Jones's belated appearance caused some inconvenience to the judge, the witnesses, and to the prosecution. It did not, however, interrupt the business of the court. From the record we glean that the court continued to function and proceeded to the next assigned case.

The trial judge relied upon certain language in *Murphy v. State*, 46 Md.App. 138, 416 A.2d 748, *cert. denied*, 288 Md. 740 (1980), to support his finding of direct criminal contempt. We think his reliance on *Murphy* was misplaced. Murphy was an attorney who failed to appear at a specially set trial. All of the other necessary parties were present, including Mr. Murphy's client. This Court noted in its opinion that the "attorney plays such an integral role in the judicial process that without his presence the wheels of justice must, necessarily, grind to a halt." *Id.* at 146, 416 A.2d at 753. The *Murphy* decision stands for the proposition that when an attorney, who is an officer of the court, fails to appear in court when he has a duty to do so, his absence is offensive conduct in the presence of the court. *Id.* at 147, 416 A.2d at 753–54; *see also Chula v. Superior Court*, 57 Cal.2d 199, 18 Cal.Rptr. 507, 368 P.2d 107 (1962); *Lyons v. Superior Court*, 43 Cal.2d 755, 759, 278 P.2d 681, 683, *cert. denied*, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955). *Murphy* does not hold that a defendant's failure to appear timely at trial is a direct criminal contempt, and we

decline to extend the *Murphy* holding so as to include such non-appearance within its ambit.

Insofar as we can determine from the record before us, Ms. Jones's case was not specially set, nor was it scheduled as a protracted case. The failure of Ms. Jones to appear resulted, as we have said, in an inconvenience but not an interruption. It is difficult to conceive of how, under the circumstances, the defendant's non-appearance in the court-room was a direct criminal contempt. *Cf. A.V. Laurins & Co. v. Prince George's County*, 46 Md.App. 548, 564–67, 420 A.2d 982, 991–93 (1980) (convictions for direct criminal contempt reversed where defendants failed to appear in court, and absence never explained to sentencing tribunal). We hold that the trial judge was not justified in adjudging Ms. Jones to be in direct criminal contempt, and, according-ly, we reverse the judgment of contempt.

In so holding, we are ever mindful of *Weaver v. State*, 244 Md. 640, 224 A.2d 684 (1966). There a defendant had appeared in the then Municipal Court of Baltimore City to answer a charge of violation of a housing regulation. Weaver's case was not set for trial on the date she ap-peared, and she was verbally ordered to appear at a later time. Instead, Weaver kept a prior engagement out of the city. The fact that Weaver was given a direct oral order by the court and wilfully chose to ignore it presents facts sufficient to distinguish that case from the matter at bar. When she did finally appear, she was cited for contempt, tried forthwith, and fined $25.00.

There, as here, the case was reversed, but the Court of Appeals grounded its reversal on the failure of the munici-pal court judge to obey Md.Rule, Subtitle P., Contempt. The Court said that Weaver's conduct was a direct con-tempt, when considered in the light of prior holdings con-cerning disregard of a court order and of then Md.Ann. Code art. 26, § 118. That section of the Code provided that failure to attend a municipal court in response to a sum-mons was punishable by a fine. The statute, moreover,

specifically provided that it was not to "be construed as limiting the power of the court ... to punish for *direct* contempt." (Emphasis supplied.)

The statutory support for the *Weaver* decision was repealed, *see* 1972 Md.Laws, ch. 181, and except for the application of Md.Rule P, what was left of *Weaver* was implicitly overruled by *Dorsey* and *Roll*. *See also Johnson v. Mississippi*, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971).

■ Aside from our holding that Ms. Jones's conduct did not constitute direct criminal contempt, there is yet another reason why this case must be reversed. Simply stated, the trial judge's failure to comply with Md.Rule, Subtitle P., Contempt, dictated reversal.

We observe that Md.Rule P. 3 mandates that "a direct contempt may be punished summarily by the court against which the contempt was committed." The rule further directs:

"b. *Order of Contempt.*

Where a direct contempt is committed, the court shall sign a written order to that effect. The order shall recite the facts, be signed by the judge and entered of record. The order shall state which of the facts were known to the court of its own knowledge and as to any facts not so known, the basis for the court's finding with respect thereto.

c. *Record.*

The record in such cases shall consist of

(1) such order of contempt,

(2) any affidavit filed by the defendant,

(3) any affidavit filed by the State's attorney in support of the order of contempt, if the court directed him to investigate or prosecute the contempt, and

(4) any testimony offered."

■ The Maryland Rules of Procedure, it has been said over and over again, are precise rubrics and not mere guidelines, *see King v. State Roads Commission,* 284 Md. 368, 371–72, 396 A.2d 267, 269 (1979); *Robinson v. Board of Education,* 262 Md. 342, 346, 278 A.2d 71, 73 (1971); *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, 270 A.2d 476, 479 (1970); *Weston International Corp. v. Woodlawn Supermarkets, Inc.,* 44 Md.App. 390, 392, 408 A.2d 781, 783 (1979); *Colonial Carpets Inc. v. Carpet Fair, Inc.,* 36 Md.App. 583, 584, 374 A.2d 419, 421 (1977); *Gnau v. Seidel,* 25 Md.App. 16, 22, 332 A.2d 739, 743 (1975); they are to be read and followed.

The rules concerning contempt of court are directed to the bench rather than to the bar. Whenever judges exercise their inherent powers to punish contempt, they must do so within the perimeters of the Maryland Rules.[4]

The judge in the matter *sub judice* did not prepare or sign a written order relative to the contempt, Md.Rule P 3 b., and the record before us does not include the order of contempt, Md.Rule P 3 c (1). The omission of those pertinent documents necessitates reversal. *See Weaver v. State,* 244 Md. 640, 224 A.2d 684 (1966); *Jones v. State,* 32 Md.App. 490, 497, 362 A.2d 660, 664 (1976) (alternative grounds for reversal of conviction for direct contempt cited as "the failure of the trial judge to comply with Md. Rule P 3 b."); *Robinson v. State,* 19 Md.App. 20, 308 A.2d 712 (1973) (order for direct criminal contempt must contain a recitation of facts pursuant to Md.Rule P 3 b.).

JUDGMENT REVERSED.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

---

4. *Cf. Kandel v. State,* 252 Md. 668, 250 A.2d 853 (1969) (conviction of attorney for direct criminal contempt upheld where compliance with Rule P 3 b. was belated but nonetheless accomplished).